## Smith's Estate.

Argued April 12, 1940.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*A. Grant Walker,* with him *Frederick F. Jones* and *Gunnison, Fish, Gifford & Chapin,* for appellant.

*John A. Blackmore,* for appellee.

OPINION BY RHODES, J., October 3, 1940:

This case involves the jurisdiction of the orphans' court.

On August 13, 1937, Archie Smith, alias Charles Jones, now deceased, opened a savings account in the Security-Peoples Trust Company, of Erie, Pa., depositing at that time approximately $1,850. On January

11, 1938, decedent called at the trust company, accompanied by his cousin, Thomas Shreve; they executed together, on the reverse side of the signature card, an agreement concerning the savings account, under seal and witnessed by W. G. Hewitt of the trust company. The agreement was as follows:

"Joint Account—Payable to Either or Survivor

"We, the undersigned depositors agree that any money placed in this bank account shall be deemed to belong to us as joint tenants and not as tenants in common subject to check by either of us; and in case of the death of either, the Security-Peoples Trust Company is hereby authorized and directed to deal with the survivor as sole and absolute owner thereof.

"Witness our hands and seals this 11 day of January, 1938.

"Charles Jones    (Seal)

"Thos. Shreve    (Seal)

"Witness:
"W. G. Hewitt"

No deposits were made in the account by Shreve. Several of the withdrawals made by Shreve were for the use of decedent; one of them was made partly for the benefit of both; and another was made wholly for Shreve's own benefit. The bank book was in the possession of decedent some of the time, but it was in possession of Shreve the greater portion of the time, and at the time of decedent's death. Since decedent's death it has remained with Shreve. On June 12, 1939, decedent died testate, leaving to survive him two cousins, Dessie Glessner and the above named Thomas Shreve. Decedent's will was dated February 13, 1939, whereby all of his personal property and all moneys, wherever located, were bequeathed to Dessie Glessner, and wherein she was named executrix. No inventory or account has been filed.

A petition was presented to the orphans' court by

Dessie Glessner, as executrix of the last will and testament of decedent and as sole legatee of his estate, praying for an order directing the trust company to turn over to her the balance in the account, claiming the same as executrix. No answer was filed. After hearing on the petition and the rule granted thereon, the court below, on January 5, 1940, held that the execution of the joint account agreement constituted an irrevocable inter vivos gift entitling Thomas Shreve, upon decedent's death, to the balance remaining in the account, discharged the rule, and made an order awarding to Thomas Shreve, surviving joint tenant, the balance in the account in the Security-Peoples Trust Company, of Erie, Pa., standing in the names of Charles Jones and Thomas Shreve as joint tenants. The petitioner excepted to the order on January 8, 1940. On January 17, 1940, the petitioner presented a motion to vacate the order "for the reason that the orphans' court did not have jurisdiction of the subject matter involved in said dispute and therefore had no power to make a decree disposing of the bank account in question, said bank account not having been in the possession of the decedent at the time of his death, and not having been in possession of the representative of his estate." Thereupon, a rule to show cause was granted. The court below held that it did have jurisdiction to award the fund either to the estate or to the claimant, Thomas Shreve, and that the testimony did not raise a disputed question of fact requiring its submission to a jury, and on January 24, 1940, discharged the rule to show cause granted on the petitioner's motion to vacate the order of January 5, 1940, and refused the motion. Petitioner, Dessie Glessner, executrix and sole legatee under decedent's will, has appealed; Thomas Shreve is the appellee.

Appellant's position now seems to be that the matter was properly before the court below by the proceed-

ings taken, but that the court, sitting without a jury, did not have jurisdiction to make a final disposition of the fund in dispute. In our opinion, the court below had no jurisdiction to entertain appellant's petition, or power to make an order for the payment of the account to appellant or appellee.

The jurisdiction of the orphans' court is entirely of statutory origin, and, although it possesses extensive powers to assist a decedent's personal representative to acquire control of property rightfully belonging to the estate, there are ultimate limitations. *McGovern's Estate,* 322 Pa. 379, 381, 186 A. 89. For example, where disputed property has never been within the control of the court, but is in possession of one, who is not a fiduciary, claiming adversely to the estate, the orphans' court has jurisdiction of neither person nor thing. *Paxson's Estate,* 225 Pa. 204, 207, 73 A. 1114; *McGovern's Estate,* supra, p. 382; *Schnepf's Estate,* 48 Pa. Superior Ct. 580; *Smith's Estate,* 52 York Legal Record 127.

In *Keyser's Estate,* 329 Pa. 514, 198 A. 125, our Supreme Court, in an opinion by Mr. Justice MAXEY, analyzed the previous decisions, and summarized the applicable principles governing the jurisdiction of the orphans' court where title to personal property is in dispute; saying (at pages 518, 519): "(1) The preliminary question for consideration is where the possession of the disputed property was at the time of the decedent's death and thereafter, up to the time of hearing. (2) If the property was in the decedent's possession, either actually or presumptively, at the time of his death, or thereafter at any time came into the possession of his personal representative, as part of the estate for purposes of administration and ultimate distribution, the jurisdiction of the orphans' court attaches and it may decree or award the disposition thereof, subject to the procedural rule next to be stated. (3)

If upon a hearing it so appears, yet a substantial dispute as to title or ownership is shown to exist between the rival claimants, the orphans' court has no power to try and determine this question, but may submit the issue to the court of common pleas for a trial by jury, under the power conferred by the Act of June 7, 1917, P. L. 363, sec. 21 (a) (20 PS sec. 2581); the verdict so found, where certified to the orphans' court, may then become the basis of a decree by that court settling the controversy.[1] (4) If, however, the property in dispute was not in decedent's possession at the time of his death, and did not thereafter come into the hands of his personal representative, the orphans' court is without power to determine title or ownership disputed by a third party claiming the property as his own. In such case the executor or administrator must bring an action at law or in equity in the court of common pleas against the party in possession."

In *McGovern's Estate*, supra, decedent, before his death, delivered a certain sum of money to Alice E. Henes, who was then his mistress, and with whom he lived until he died. The administrator of his estate claimed that she had obtained this money fraudulently. The administrator petitioned the orphans' court to order her to pay to the estate a sum representing the balance of the amount claimed to have been fraudulently obtained by her. The court below made an order granting the administrator's petition; on appeal by Alice E. Henes the Supreme Court reversed. It was there held that the orphans' court had no jurisdiction over the person of appellant; that the fund which it ordered her to pay to the estate had never been in its control; and that "the orphans' court cannot determine the validity of a disputed debt to an estate."

When decedent in the instant case made the deposits in the trust company, the money so deposited ceased to

---

[1] See Act of May 5, 1939, P. L. 94, §1, 20 PS §2585.

be the money of decedent, and became the money of the trust company in which it was deposited. Thereafter there was simply a debt due to decedent. If nothing more would have happened concerning the bank account, and after decedent's death a dispute would have arisen between the trust company and decedent's legal representative over its payment, the orphans' court would have had no jurisdiction to determine that dispute. Such a controversy would be for the common pleas to settle. *Hober's Estate,* 118 Pa. Superior Ct. 209, 213, 180 A. 140. See, also, *Szovak's Estate,* 51 Pa. Superior Ct. 7.

Subsequent events after the original deposit by decedent also demonstrate that the court below had no jurisdiction to entertain appellant's petition. When decedent and appellee signed the joint account agreement, presumably thereby they created a joint account, a present joint interest in a chose in action, with the right of survivorship. See *Mardis v. Steen,* 293 Pa. 13, 141 A. 629; *Mader et al. v. Stemler et al.,* 319 Pa. 374, 179 A. 719. Appellant concedes that the signed bank card standing by itself would be sufficient to create a joint interest in the account with the right of survivorship. Therefore, when decedent died there was presumably nothing to which jurisdiction of the orphans' court could attach. Assuming that a valid joint account with right of survivorship was created, then no greater right accrued by the death of decedent, but the right already existing in survivor appellee continued, while that which had existed in decedent ceased. In so far as the court below was concerned, decedent presumably did not die seized of this property. As was stated in *Cutler's Estate,* 225 Pa. 167, at page 170, 73 A. 1111, at page 1113: " . . . . . . the jurisdiction of the orphans' court is limited to the estate of which the testator died seized. With respect to such estate it has full jurisdiction; but this marks its ultimate limit." The dis-

puted account was no part of decedent's estate; and it was never in the possession or control of his legal representative. In fact, appellee, the claimant, is here a stranger to the estate, and stands in no fiduciary relation thereto. If there exists sufficient reason to assert an adverse claim to his apparent right to the balance in the account, the soundness of that claim must be adjudicated by the proper tribunal before this property can fairly be brought within the jurisdiction of the orphans' court. *Schnepf's Estate,* supra, p. 585.

If the account in the trust company was a debt due by that institution to the estate of decedent, appellant was entitled to receive payment, and the money would be subject to the jurisdiction of the orphans' court after it came into her hands; but if the account was payable to appellee it was not an asset of the estate, and over it the orphans' court had no jurisdiction. "It may be very clear that under the laws of Pennsylvania this fund belongs to the administrator [appellant]. If so, it is simply a debt due to the estate": *Appeal of Harrisburg National Bank,* 84 Pa. 380, at page 384. No act of assembly has given the orphans' court jurisdiction to determine the question to whom this debt was due from the trust company.

The court below relies principally on *Crisswell's Estate,* 334 Pa. 266, 5 A. 2d 577. In that case the ownership of certain stock certificates was involved; and the facts and holding are clearly distinguishable from the instant case. In the former case, the certificates, being in the name of decedent and unendorsed, imported ownership in him up to the time of his death, and therefore established a prima facie title in his estate; and claimant had a mere scintilla of evidence by way of vague denials and assertions. The court said (p. 270): " 'If at testator's death the property is shown to have been in his possession, or if for any other reason it was presumably [presumptively] his, a mere

denial of his ownership unsupported will not oust the court [orphans' court] of its jurisdiction, but the court may proceed with the investigation so far as to inform itself whether the denial is made in good faith and a substantial dispute exists.' " In the present case the agreement between decedent and appellee provided that either might withdraw the money during their joint lives, and the survivor on the death of either. According to the agreement the trust company's obligation would be discharged by paying to the survivor, who is now the appellee. We find no basis upon which it could reasonably be concluded that the balance in the account, after decedent's death, was presumably his, or that it had been in the possession of decedent at the time of his death, or thereafter came into the hands of his personal representative; and here it is the estate and not the claimant which comes with mere denials and allegations. The principles summarized in *Keyser's Estate,* supra, which we have herein quoted, are restated with approval in *Crisswell's Estate,* supra, pp. 269, 270.

The appearance of the trust company by counsel, admitting that the sum in its hands was payable to such person as the court might direct, discloses nothing which could confer jurisdiction upon the orphans' court. *Szovak's Estate,* supra, p. 10. It may be anomalous that it was appellant who originally submitted the question of ownership of the fund to the court below, and after an adverse order objected to the jurisdiction of the very court to which appellant submitted the controversy, but this is not determinative of the jurisdiction of the orphans' court. The court below had no jurisdiction over the subject-matter, and jurisdiction could not be conferred by the initial consent of the parties. It had no authority to award the balance in the account to appellee, as it could not make any order on the trust company to pay over any of its funds to appellee. See *Hober's Estate,* supra, p. 219.

Its order was unenforceable and a nullity. For want of jurisdiction the court below should have refused to entertain appellant's petition.

We are not deciding to whom the balance in the account is payable by the trust company. We merely conclude that the orphans' court has no jurisdiction to determine that question.

The order of the court below is reversed, and the appeal is dismissed at the cost of appellant.