Webb Estate.

Argued November 11, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

reargument refused February 14, 1958.

*Edward Unterberger,* for appellants.

*Joseph B. Quinn,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, January 8, 1958:

This case presents a very narrow issue: does an Orphans' Court have jurisdiction to compel realtors, who have been acting as agents of the administrators, to turn over to the administrators rents which they have collected from decedent's realty since decedent's death?

When John Webb, the decedent, died, intestate, on April 25, 1953, his estate was insolvent. The principal asset of the estate was an apartment house located at 3425-29 Powelton Avenue, Philadelphia, which was sold during the administration of the estate by order of the Orphans' Court.

During decedent's lifetime the appellants managed the apartment house and collected the rents as decedent's agents and they were continued in this capacity by the administrators. Since decedent's death appellants have collected rents totalling $4914.05, which they have refused to turn over to the administrators, claiming that the decedent owed their partnership $961.78 and that the decedent owed Morris Seidman, one of the co-partners, $4000, evidenced by an unrecorded judgment note; they have applied the amount of rents collected to the payment of these obligations.

The administrators did not include the rent in their account; at the audit objection was made to this omission from the account and efforts were made to compel an accounting for the rent. The auditing judge

refused to compel an accounting upon the ground that the rents never came into the possession of the personal representative and were not registered in the name of the decedent or his nominee, hence the Orphans' Court had no jurisdiction. In a supplemental adjudication the auditing judge affirmed his prior ruling. Thereafter a unanimous court en banc, speaking through President Judge CHARLES KLEIN, while agreeing with the auditing judge's conclusion that the question was not properly before the court on audit because the rents were neither included in the account nor received by the administrators, nevertheless concluded that the Orphans' Court did have jurisdiction to compel the appellants to turn over the rents collected and directed the appellees to petition the court for a citation to issue to show cause why the rents should not be turned over to them.

The administrators then filed a petition for a citation which recited, inter alia, the ownership of the apartment house by decedent during his lifetime, that appellants were his agents for collection of rents and, subsequent to his death, "were continued in this capacity by the [Administrators of the Estate of John Webb, deceased]", that they have $4914.05 collected between the date of death and the sale of the property which, after demand, they have refused to turn over to the administrators. After issuance of the citation, preliminary objections were filed which squarely raised the question of the jurisdiction of the Orphans' Court. The preliminary objections were dismissed and from the order of dismissal this appeal was taken.

The Orphans' Court possesses the power of a court of chancery in aid of an exercise of its jurisdiction over and above the power vested in it by statute.

Prior to the Orphans' Court Act of 1951, the jurisdiction of the Orphans' Court to adjudicate the title

to personalty depended on whether the personalty was, actually or presumptively, in decedent's possession at the time of death, or thereafter came into the possession of his personal representative: *Starz Estate,* 353 Pa. 612, 46 A. 2d 486; *DiPaola Estate,* 350 Pa. 408, 39 A. 2d 519; *Brown's Estate,* 343 Pa. 230, 22 A. 2d 821; *Crisswell's Estate,* 334 Pa. 266, 5 A. 2d 577; *Keyser's Estate,* 329 Pa. 514, 198 A. 125; *McGovern's Estate,* 322 Pa. 379, 186 A. 89; *Williams' Estate,* 236 Pa. 259, 84 A. 848; *Cutler's Estate,* 225 Pa. 167, 73 A. 1111; *Balok Estate,* 151 Pa. Superior Ct. 592, 30 A. 2d 664; 7 U. of Pitt. L. Rev. 163; 47 Dick. L. Rev. 1.

The present jurisdiction of the Orphans' Court is determined by section 301(13) of the Orphans' Court Act of August 10, 1951, P. L. 1163, art. III,[1] 20 PS §2080.301, reading as follows: "The Orphans' Court shall have exclusive jurisdiction of: . . . (13) Title to Personal Property. The adjudication of the title to personal property in the possession of the personal representative, or registered in the name of the decedent or his nominees, or alleged by the personal representative to have been in the possession of the decedent at the time of his death." This statutory provision was "intended to obviate, whenever possible, a preliminary dispute as to whether the Orphans' Court has jurisdiction to determine the title to the disputed property".[2]

This section considerably broadened the scope of the court's jurisdiction and jurisdiction now exists where the following situations arise: (1) If the personalty was in decedent's possession, actually or presumptively, at the time of death; (2) if the personalty came

---

[1] Unaffected by the amendments of 1953 and 1955-56.

[2] Explanatory Comment to §301(13) from the Report of the Joint State Government Commission of the General Assembly of Pennsylvania.

into the possession of decedent's personal representative subsequent to his death; (3) if neither (1) nor (2) exist, but if the personalty was "registered" in the name of decedent or his nominee;[3] (4) if there is an allegation[4] by the personal representative that the personalty was in possession of the decedent when he died.

An examination of the petition for citation—the basis upon which appellees seek to recover the rent money—indicates that situations (1), (3) and (4), supra, do not exist and that if appellees' position is to be sustained it must be on the basis of situation (2), supra. Did the rent money come into the possession of the administrators subsequent to decedent's death?

Actually the rent money never came into the hands of the administrators but it did come into the hands of appellants who were acting as the agents of the administrators. Was possession of this money possession by the administrators so as to entitle the Orphans' Court to assume jurisdiction? For the purpose of this review and on the basis of the pleadings we must assume the agency in existence between the parties and that the money was collected by appellants in pursuance of that agency.

The right of the administrators to collect the rents is clear: Fiduciaries Act of April 18, 1949, P. L. 512, art. V, §501, 20 PS §320.501. Armed with the authority to collect the rents the administrators authorized their collection by appellants as their agents. No attack upon the authority of the administrators to ap-

---

[3] "Registered" is a synonym for "to record formally and exactly", "to enter precisely" or to "enter formally on a record": Words and Phrases, vol. 36, p. 648.

[4] Allegation is a synonym for "charge", "statement", "claim" or "declaration". For a general discussion of the term see Words and Phrases, vol. 3, pp. 322-326. The distinction between things alleged and things proven is clear.

point agents for the collection of rents has been made. When the rents came into appellants' hands, their possession was that of their principal, the administrators, and it then became their duty to account for and pay over such rent money to the administrators.

We agree with the following analysis of the situation by the court below: "From earliest times possession of property in the hands of an agent of a fiduciary has been regarded as being in possession of the fiduciary. Both Williams on Executors, Vol. 11, p. 1442, and Schouler on Wills, Executors and Administrators, 6th Ed., Vol. 3, p. 2246, two of the leading textbooks on this subject, cite the following quotation from Jenkins v. Plombe, 6 Mod. 92, an English case decided more than 160 years ago: 'And if an executor appoint another to receive a debt of his testator, and he receive it, it is now the same thing as if he had actually received it himself, and will be assets in his hands; . . . .'

"In Watts' Estate, 158 Pa. 1 (1893), the Supreme Court held that an attorney who has received money belonging to a decedent's estate, from an administrator whom he represented, was amenable to the jurisdiction of the Orphans' Court. To the same effect see: In Wanamaker's Petition, 25 D. & C. 694. (1936).

"In Jeffries's Estate, 16 D. & C. 808 (1932), this court, in an opinion by Gest, J., held that the Orphans' Court has jurisdiction to follow a fund belonging to a decedent's estate and to require its repayment by an innocent third party from a defaulting executor.

"In Freed Estate, 86 D. & C. 592 (1954), we compelled the respondent who received an asset of a decedent's estate from the administratrix, allegedly in payment for services rendered the estate, to return the asset to a successor administrator, without prejudice,

however, to the recipient's right to present a claim for the alleged services against the estate.

"The administration of the estate of a decedent is one indivisible judicial proceeding, from the grant of letters appointing the administrator until his discharge. The administrator while functioning is at all times under the control and direction of the orphans' court. He is, in a sense, an officer of the court and any property received by him as administrator may be regarded as in the custody of the court.

"Morris Seidman and Sons, the real estate agents, knew of the death of John Webb, the decedent, and of the appointment of the two attorneys, Harvey N. Schmidt and Leon Sobel, as administrators. In collecting the rents from the apartment house, they knew they were dealing with property forming part of the estate of a decedent subject to the jurisdiction of this court. They cannot defy the authority of this court and thereby create for themselves a preferential position over decedent's other creditors."

*Comerford Estate,* 388 Pa. 278, 130 A. 2d 458; *Patterson's Estate,* 341 Pa. 177, 19 A. 2d 165; *Foulke's Estate,* 334 Pa. 186, 5 A. 2d 179; *Crisswell's Estate,* supra; *Keyser's Estate,* supra; and *Appeal of the Harrisburg National Bank,* 84 Pa. 380, relied on by appellants, are clearly distinguishable.

The moment the rent money came into appellants' hands it came into the possession of the administrators because appellants received it for and on behalf of their principals. Such possession is sufficient to enable the Orphans' Court to exercise jurisdiction in this situation.

Decree affirmed. Costs on appellants.