## Rogan Estate.

138

Argued September 29, 1958. Before Jones, C. J., Bell, Musmanno, Jones and Cohen, JJ.

*Samuel Avins,* for appellant.

*Abraham Pervin,* with him *Sachs, Pervin & Kaufman,* for appellee.

Opinion by Mr. Justice Benjamin R. Jones, November 10, 1958:

Michael D. Rogan, decedent, died, testate,[1] on February 14, 1958, survived by a son, M. D. Rogan, Jr., and a daughter, Marie Neiderlander.

On January 31, 1958 decedent had a checking account in his own name in the Allegheny Trust Company, Pittsburgh, Pa. the balance in which was $18,325.09. On that date on the basis of a writing purporting to bear decedent's signature the Trust Company permitted the balance in said account to be transferred to a joint checking account in the names of decedent and Sheila P. Rogan, the wife of M. D. Rogan, Jr. and decedent's daughter-in-law.[2]

On February 17, 1958—three days subsequent to decedent's death—Sheila P. Rogan withdrew from the checking account $17,500 and later the entire balance. Of the amount withdrawn $15,000 was deposited in the Peoples First National Bank and Trust Company, Pittsburgh, Pa.

The Potter Bank and Trust Company, the executor under decedent's will, presented a petition to the Orphans' Court of Allegheny County seeking a citation against Sheila P. Rogan, M. D. Rogan, Jr., the Allegheny Trust Company and the Peoples First National Bank and Trust Company to show cause why they should not turn over to the executor the amount withdrawn,—to wit, $18,325.09—and also sought a preliminary injunction restraining them, or any of them, from disposing of said money. To this petition and citation Sheila P. Rogan filed preliminary objections raising principally the jurisdiction of the Orphans' Court in

---

[1] Under decedent's will dated June 27, 1951 the decedent gave his son $100 because "he has not shown himself to be an affectionate and devoted son" and left the residue of his estate to his daughter.

[2] The record indicates that the written transfer was delivered to the Trust Company by M. D. Rogan, Jr. and Sheila P. Rogan.

the matter. In a per curiam opinion the Orphans' Court dismissed the preliminary objections.

The sole question at issue is whether under the circumstances the Orphans' Court had jurisdiction to adjudicate the ownership of the bank account.

As President Judge RHODES, speaking for the Superior Court, in *Smith's Estate,* 141 Pa. Superior Ct. 571, 575, 15 A. 2d 523, well stated: "The jurisdiction of the orphans' court is entirely of statutory origin, and, although it possesses exclusive powers to assist decedent's personal representative to acquire control of property rightfully belonging to the estate, there are ultimate limitations . . ." The Orphans' Court Act of 1951, as amended,[3] prescribes the jurisdictional limitations of the Orphans' Court applicable to the present situation.

In *Webb Estate,* 391 Pa. 584, 138 A. 2d 435, 437, in delineating the jurisdiction of the Orphans' Court to adjudicate the title to personalty, we have said: "This section considerably broadened the scope of the court's jurisdiction and jurisdiction now exists where the following situations arise: (1) If the personalty was in decedent's possession, actually or presumptively, at the time of death; (2) if the personalty came into the possession of decedent's personal representative subsequent to his death; (3) if neither (1) nor (2) exist, but if the personalty was 'registered' in the name of decedent or his nominee; (4) if there is an allega-

---

[3] Act of August 10, 1951, P. L. 1163, Art. III, §301, as amended, 20 PS §2080.301, which reads as follows: "The orphans' court shall have exclusive jurisdiction of: . . . (13) Title to Personal Property. The adjudication of the title to personal property in the possession of the personal representative, or registered in the name of the decedent or his nominee, or alleged by the personal representative to have been in the possession of the decedent at the time of his death."

tion by the personal representative that the personalty was in possession of the decedent when he died."[4]

Our inquiry requires a determination whether the personalty presently involved falls within any of the above situations. In our opinion it clearly does. *Mc-Govern's Estate,* 322 Pa. 379, 186 A. 89; *Keyser's Estate,* 329 Pa. 514, 198 A. 125; *Patterson's Estate,* 341 Pa. 177, 19 A. 2d 165; and *Smith's Estate,* 141 Pa. Superior Ct. 571, 15 A. 2d 523, relied upon by appellant,—*all decided prior to the Orphans' Court Act of 1951, supra*—held that the jurisdiction of the Orphans' Court to adjudicate the title to personalty depended upon whether the personalty was in the actual or presumptive possession of decedent at the time of his death or subsequently came into the possession of decedent's personal representative. The Orphans' Court Act of 1951 enlarged the jurisdiction of the Orphans' Court in that it conferred upon that Court the authority to determine title to personalty not only where actual or presumptive possession was in decedent when he died or where such possession was in the personal representative after the death but also where the personalty was *registered* in the name of decedent or his nominee or where the personal representative *alleged* that decedent possessed the personalty at the time of his death. It is under this *enlarged* jurisdiction that the Orphans' Court derives its authority to act in the instant situation.

At the time of decedent's death the bank account was in his name and that of appellant. Appellant contends that the word "registered" in the statute was in-

---

[4] Section 301(13) was "intended to obviate, wherever possible, a preliminary dispute as to whether the Orphans' Court has jurisdiction to determine the title to the disputed property:" Explanatory Comment from the Report of the Joint State Government Commission of the General Assembly of Pennsylvania.

tended to apply only to those types of personalty where actual "registration" occurs, i.e. motor vehicles and securities. Such a narrow and restricted construction of the legislative intent is without merit. It is obvious that the legislative intent was to include personalty in the *name* of the decedent at the time of his death, whether in his name alone or in the names of other persons and/or decedent. This Court has affirmed the jurisdiction of the Orphans' Court in similar circumstances on recent occasions: *Webb Estate*, 391 Pa. 584, 138 A. 2d 435; *Balfour v. Seitz*, 392 Pa. 300, 140 A. 2d 441; *Furjanick Estate*, 375 Pa. 484, 100 A. 2d 85; *Fell Estate*, 369 Pa. 597, 87 A. 2d 310. See also: *Martella Estate*, 390 Pa. 255, 135 A. 2d 372; *Comerford Estate*, 388 Pa. 278, 130 A. 2d 458. In *Fell Estate*, supra, this Court, speaking through Mr. Justice MUSMANNO, said (p. 601) : "The only points left to consider are the printed joint tenancy contract in the bankbook which was not signed, and the jurisdiction of the Orphans' Court over this litigation . . . As to the latter, the controversy was within the jurisdiction of the Orphans' Court . . ."

Whether or not appellee, as decedent's personal representative, has *alleged*[5] that this bank account was in the possession of decedent at the time of his death requires an examination of the petition and such an examination indicates the presence of the necessary allegation. While perhaps the allegation was inartistically pleaded yet in paragraph 4 of the petition appellee avers: "4. Among the assets of the said decedent on February 14, 1958, the date of his death, was a check-

---

[5] " 'Allegation' is a synonym for 'charge', 'statement', 'claim' or 'declaration'. For a general discussion of the term see Words and Phrases, Vol. 3, pp. 322-326. The distinction between things alleged and things proven is clear": *Webb Estate*, supra, footnote 4, p. 588.

ing account in the Allegheny Trust Company, which account, on said date, had a balance of Eighteen Thousand, Three Hundred Twenty-five and 09/100 ($18,325.09) Dollars." The prayer of the petition seeks the delivery of "Eighteen Thousand Three Hundred Twenty-five and 09/100 ($18,325.09) Dollars which was in the decedent's checking account in the Allegheny Trust Company on the date of his death." Such allegations suffice to attach the statutory jurisdiction of the Orphans' Court.

On both grounds set forth in this opinion, the Orphans' Court had jurisdiction to adjudicate the ownership of this bank account and, pending such adjudication, to enjoin the withdrawal or disposition of the proceeds thereof.

Decree affirmed. Costs on appellant.