### Kates Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, J. J.

*Louis Marion*, for petitioner.

*Joseph B. Quinn*, for respondent.

SHOYER, J., June 2, 1961.—The executrix of the estate of Marty Kates enlists the aid of this court to compel respondent bank to return $3,750 to decedent's checking account. The petition alleges that the account contained $646.83 at the time of her decedent's death on April 15, 1960, to which were added "various sums of money received chiefly from debtors of decedent's business so that on or about May 1, 1960 there was on deposit in said account of decedent a sum in excess of $4,000." Further, that on or about May 2, 1960, the bank "seized and deducted" $3,750 from this account in repayment of a preëxisting debt.

Respondent has filed preliminary objections to the jurisdiction of this court and to the legal sufficiency of the petition, and insists upon the bank's right to the alleged setoff.

We have not the slightest doubt of the statutory authority of this court to hear and decide the merits of the present petition. At the outset we repeat the oft-quoted statement that "The jurisdiction of the Orphans' Court over the settlement, administration, and distribution of a decedent's estate is exclusive: Mauser v. Mauser, 326 Pa. 257; (1937), 192 A. 137; Thomas v. Johnson, supra (356 Pa. 570)": Trout v. Lukey, 402 Pa. 123. However, "The jurisdiction of the or-

phans' court is entirely of statutory origin, and, although it possesses extensive powers to assist decedent's personal representative to acquire control of property rightfully belonging to the estate, there are ultimate limitations": Smith's Estate, 141 Pa. Superior Ct. 571, 575.

Section 301 (13) of the Orphans' Court Act of August 10, 1951, P. L. 1163, 20 PS §2080.301(13), prescribes the jurisdictional limitations of the orphans' court applicable to the present situation:

"The orphans' court shall have exclusive jurisdiction of . . . (13) Title to Personal Property. The adjudication of the title to personal property in the possession of the personal representative, or registered in the name of the decedent or his nominee, or alleged by the personal representative to have been in the possession of the decedent at the time of his death."

Before the passage of this 1951 Act, the inquiry "in limine" was whether a specific article of property belonged to the decedent's estate.

"If at testator's death the property is shown to have been in his possession, or if for any other reason it was presumptively his, a mere denial of his ownership unsupported will not oust the court of its jurisdiction, but the court may proceed with its investigation so far as to inform itself whether the denial is made in good faith and a substantial dispute exists. If the dispute be a substantial one, and the title be really involved, may the court further proceed to settle and determine the matter in dispute? Certainly no authority to do so can be found within the terms of the statute, and we think it quite as clear that it cannot be implied from anything in the act. . . . Such muniments of title as those upon which this accountant here rested may be overcome, and oftentimes are, but the assault upon them cannot be carried on in the orphans' court. . . . We must assume that the evidence offered by the exceptants

showed a substantial dispute as to the validity of the written assignments. The question thus presented was a preliminary one on the determination of which the jurisdiction of the orphans' court depended. . . . Having once determined that a substantial dispute existed as to the ownership of these securities . . . the court should have at once directed an issue to the common pleas as it is empowered to do by the Act of March 29, 1832, P. L. 190. A verdict upon the issue would have been more than advisory; unreversed, it would have been conclusive . . .": Cutler's Estate, 225 Pa. 167, 171, 172, 173.

Chief, then Mr., Justice Moschzisker digested and classified most of the Pennsylvania cases decided by our appellate courts prior to 1912 in a scholarly opinion in Williams' Estate, 236 Pa. 259. These cases clearly showed the difficulty of the jurisdictional problem. Extended litigation in Cutler's Estate, supra, and McGovern's Estate, 322 Pa. 379, evidenced the real need for remedial legislation. It was only upon the second appeal to the Supreme Court in McGovern that the orphans' court was found to lack jurisdiction to compel payment of a debt by a third person.

Not only was the 1951 statute intended to eliminate preliminary disputes as to the jurisdiction of the orphans' court (see Commission's comment to section 301(13)), but it considerably enlarged the jurisdiction of the court as well: Webb Estate, 391 Pa. 584. In Webb, this court had ordered realtors, who had been acting as agents of the administrators, to turn over to the administrators rents which they had collected from decedent's realty since decedent's death. In affirming the order of the orphans' court, the Supreme Court said:

"This section considerably broadened the scope of the court's jurisdiction and jurisdiction now exists where the following situations arise: (1) If the person-

alty was in decedent's possession, actually or presumptively, at the time of death; (2) if the personalty came into the possession of decedent's personal representative subsequent to his death; (3) if neither (1) nor (2) exist, but if the personalty was 'registered' in the name of decedent or his nominee; (4) if there is an allegation by the personal representative that the personalty was in possession of the decedent when he died": Pages 587-88.

Quoting from the opinion of President Judge Klein of this court: " 'The administration of the estate of a decedent is one indivisible judicial proceeding, from the grant of letters appointing the administrator until his discharge. The administrator while functioning is at all times under the control and direction of the orphans' court. He is, in a sense, an officer of the court and any property received by him as administrator may be regarded as *in the custody of the court* ": Page 590. (Italics supplied.)

The Supreme Court in Webb held:

"The moment the rent money came into appellants' hands it came into the possession of the administrators because appellants received it for and on behalf of their principals. Such possession is sufficient to enable the Orphans' Court to exercise jurisdiction in this situation": Page 590.

The deposit of various sums in this decedent's checking account after decedent's death bears an analogy to the collection of the rents in Webb. Until the grant of letters testamentary to petitioner on April 29, 1960, these sums might well be regarded as, if not in the custody of the court, at least in gremio legis. We are fully aware that under the older authorities this court would probably have lacked jurisdiction, for a bank deposit has been held to be only a debt: Smith's Estate, supra, 577; Hober's Estate, 118 Pa. Superior Ct. 209, 213; contra, Dench's Estate, 15 Erie 145; Tekane's Estate,

28 Northamp. 137. Under the enlarged jurisdiction of this court, however, we are additionally authorized to determine title ". . . where the personalty was *registered* in the name of decedent or his nominee or where the personal representative *alleged* that decedent possessed the personalty at the time of his death": Rogan Estate, 394 Pa. 137, 141. In Rogan, it was held on both of the above grounds that the orphans' court had jurisdiction to adjudicate ownership of a checking account registered in the joint names of decedent and a third party.

In her petition in this case, the executrix has averred: "3. At the time of his death, decedent had on deposit with the Liberty Real Estate Bank and Trust Co. of Philadelphia a checking account on which there was a balance to his credit in the sum of Six Hundred Forty-six Dollars and eighty-three cents ($646.83)." There are additional averments of the existence of a bank account belonging to decedent in paragraphs 4, 6 and 10. By demurring to this court's jurisdiction, respondent has for present purposes admitted the existence of a bank account in decedent's name at the time of his death. For the purpose of jurisdiction a bank account, or chose in action, is personal property (Rodriguez Estate, 6 D. & C. 2d 521), and it cannot matter that the bank account was in the name of decedent alone. "At the time of decedent's death the bank account was in his name and that of appellant. Appellant contends that the word 'registered' in the statute was intended to apply only to those types of personalty where actual 'registration' occurs, i.e. motor vehicles and securities. Such a narrow and restricted construction of the legislative intent is without merit. It is obvious that the legislative intent was to include personalty in the *name* of the decedent at the time of his death, whether in his name alone or in the names of other persons and/or decedent": Rogan Estate, supra, 141, 142.

It is likewise clear, on the authority of Rogan Estate, supra, 142, 143, that petitioner has sufficiently *alleged* that this bank account was in the possession of decedent. For the very same reasons as stated in Rogan, therefore, we hold that this court has jurisdiction over the disputed bank account in the name of Marty Kates.

We are not at this time deciding the validity, or invalidity, of respondent's right to a setoff. Time for that will be at a proper hearing when the claims and counterclaims of the parties can be presented in detail. In this connection it should be noted that the legislature, while enlarging the jurisdiction of the orphans' court, has been alert to protect respondent's constitutional right to a jury trial: Section 745(*b*), Orphans' Court Act of August 10, 1951, P. L. 1163, 20 PS §2080.745(*b*). We are holding, however, that on the basis of the averments in her petition, the executrix has stated a case which falls within the jurisdiction of this court.

Respondent's other objections go to the alleged failure of petitioner to state in detail the various debit and credit transactions between decedent and the bank, and also to give a complete statement of decedent's assets and liabilities. In its brief, respondent bank has given its own version of the accounts between respondent and decedent at the time of his death and, in so doing, reveals a failure of $3,000 in life insurance collateral which could indeed account for decedent's alleged insolvency. Respondent's answer may well be characterized as a speaking demurrer, and such pleading is no sounder today than it was at common law. Furthermore, it is the invariable practice of this court to insist upon such sharpening of the issues as can be accomplished only by a full pleading of the facts. Serious issues such as the present cannot be safely disposed of on less than a complete record.

Accordingly, we enter the following

*Decree*

And now, June 2, 1961, for the reasons set forth in the foregoing opinion, the preliminary objections are dismissed and respondent is given leave to file an answer on the merits within 20 days.