## Wachstetter Will.

Argued November 10, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*M. Paul Smith,* with him *Allen H. Smith, Charles V. Snyder, Jr.,* and *Smith, Aker, Grossman & Hollinger,* for appellants.

*Robert Ruppin,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, January 17, 1966:

The next of kin of Mabel S. Wachstetter appealed from the final Decree of the Orphans' Court which awarded her residuary estate to her residuary legatee, the Quarryville Presbyterian Home.*

Mrs. Wachstetter died testate August 1, 1963,** leaving an estate of $30,000. She was not survived by her husband or by issue or parents. Her next of kin were three brothers, who are the appellants. They contend that the residuary gift to the Home failed for reasons hereinafter discussed, and that consequently they take under the intestate laws. Mrs. Wachstetter's will dated February 28, 1962 contained the following residuary clause: "SECOND: I give, devise and bequeath all the rest, residue and remainder of my property, real, personal, and mixed to The Quarryville Presbyterian

---

* Hereinafter referred to as "the Home."

** This date appears in the Petition for Probate, a different date supplied by a witness was obviously in error.

Home, R.F.D. No. 2, Quarryville, Pa., *absolutely*,* with the understanding that the same shall be used for the care and keep of my beloved husband, Harry H. Wachstetter, as long as he may live."

Testatrix's husband died on June 17, 1963 and thus predeceased her by 40 days. The auditing Judge and the Court en banc decided that the "understanding" clause hereinabove quoted was *a condition subsequent*, and that the Home's inability, because of the prior death of testatrix's husband to perform the aforesaid condition of caring for and keeping her husband as long as he lived, did not invalidate the absolute legacy which she had given to the Home.

Four important questions are presented: (1) Was this testamentary residuary gift to the Home a condition subsequent or precedent; (2) was parol evidence admissible to aid the Court in ascertaining the intent of the testatrix; (3) if it was a condition subsequent, was it defeated by the prior death of testatrix's husband which rendered performance by the Home impossible; and (4) if the testamentary residuary gift to the Home was valid when the will was executed, was it abrogated and nullified by the subsequent actions of the testatrix and the Home?

Several of these questions are so interrelated in this case that they will be considered and discussed together.

The law is aptly stated in *Hoover Estate*, 417 Pa. 263, 207 A. 2d 840, where the Court said (page 266): "In Houston Estate, 414 Pa. 579, 201 A. 2d 592, the Court, quoting from prior decisions, said (pages 586-587) : . . . " 'It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four

---

* Italics throughout, ours.

corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting, or the testator's intent is for any reason uncertain: Dinkey Estate, 403 Pa. 179, 168 A. 2d 337; Pruner Estate, 400 Pa. 629, 162 A. 2d 626; Wanamaker Estate, 399 Pa. 274, 159 A. 2d 201; Hope Estate, 398 Pa. 470, 159 A. 2d 197.' ''.

'' '. . . '' 'it is not what the Court thinks he might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words. Kelsey Estate, 393 Pa. 513, 143 A. 2d 42; Britt Estate, 369 Pa. 450, 87 A. 2d 243; Sowers Estate, 383 Pa. 566, 119 A. 2d 60; Cannistra Estate, 384 Pa. 605, 121 A. 2d 157.' Saunders Estate, 393 Pa. 527, 143 A. 2d 367. See to the same effect Althouse Estate, 404 Pa. 412, 172 A. 2d 146 . . .''; Woodward Estate, 407 Pa. 638, 640, 182 A. 2d 732.' ''

When we place ourselves in the armchair of the testatrix at the time she made her will, we find she was familiar with the following facts and circumstances: She and her husband went to live in the Home on February 16, 1962. Two weeks previously, to wit, on January 30, 1962, she (and her husband) had signed a contract under the terms of which they agreed to convey and transfer to the Home all their property, and the Home in turn had agreed to provide them with board, lodging and care for the rest of their lives. On February 28, 1962, at the suggestion of the Reverend Mr. Dyrness, who is the Director of the Home, Mrs. Wachstetter executed her present will, which he had prepared for her.*

---

* Mr. Dyrness is not a lawyer. We further note that Mr. Wachstetter also signed an identical will which had been prepared by

When testatrix made her aforesaid last will, she had a husband living. She also had three brothers whom the testimony subsequently showed she did not wish to have any part of her estate. The facts in this case were unusual. In May of 1961 when the Wachstetters were inmates of another home at Elizabethtown but were contemplating entering the Quarryville Home, they had signed, at the request of Mr. Dyrness, two other wills* which, strange to say, were identical with the will which Mrs. Wachstetter executed on February 28, 1962.

Dyrness further testified that the Home's lawyer had advised him that if an inmate faithfully carried out the admission contract and had transferred all his property to the Home, his will would be unnecessary.**

The law on the subject of conditions precedent and subsequent is tenuous and technical and some of the decisions are difficult to reconcile. *Alexander's Estate,* 341 Pa. 471, 19 A. 2d 374. The Third Revised Edition of Page on Wills, Vol. 5, §44.22 (page 456) thus states the law: "In most states, provisions relating to support or service, if regarded as conditions, are construed as subsequent rather than precedent whenever possible. In such cases the gift is not avoided because the support is not given by reason of the fact that the person to be supported dies before testator." Moreover if doubt exists, the law favors a construction which gives a vested estate in preference to a contingent estate, *Newlin Estate,* 367 Pa. 527, 534, 80 A. 2d 819.

---

Mr. Dyrness and executed, although the date of his will does not appear in the record.

* Dyrness testified as a witness for the appellants that it was the Home's practice to ask inmates and prospective inmates to sign wills in which the Home was made the residuary beneficiary.

** However, persons who enter or contemplate entering a home do not always convey and transfer all of their property to the home as they agreed to do, and sometimes they inherit after-acquired property.

We believe the law on "conditions" is well expressed in *Adams v. Johnson,* 227 Pa. 454, where the Court said (pp. 456, 457) : "A condition is defined to be any qualification, restriction, or limitation annexed to a gift, and modifying or destroying essentially its full enjoyment and disposal: Schouler on Wills, sec. 598. *Conditions on which estates are limited in wills may be precedent or subsequent. If precedent, the estate does not vest until the condition is fulfilled; if subsequent, it is liable to be divested on the subsequent failure of the condition.* A condition precedent must be strictly, literally and punctually performed; Vanhorne v. Dorrance, 2 Dall. 304; Brannan v. Mesick, 10 Cal. 95; Martin v. Ballou, 13 Barb. 119. It may be valid although there is no ulterior limitation of the estate to which it is annexed: Campbell v. MacDonald, 10 Watts, 179; Gilliland v. Bredin, 63 Pa. 393; Tilley v. King, 109 N.C. 461. In construing a particular provision of a will, *the intention of the devisor* to create an estate on condition *governs,* but it must be manifested in express terms, or by clear implication, *and it is to be gathered from the whole instrument and the existing facts*: 6 Am. & Eng. Ency. of Law (2 ed.), 502." See also Hunter's "Pennsylvania Orphans' Court Commonplace Book" §4, under "Conditions."

The law is also thus stated in 41 P.L.E., pp. 22-23, §488, as follows: "Where a condition precedent to the vesting of an estate or interest created by a will is imposed, the estate or interest cannot vest until the happening or performance of the condition, but an estate or interest limited by a condition subsequent vests immediately on the testator's death, subject to being divested."

We believe that the language of this will, in the light of the extrinsic facts and circumstances in this case, has created a latent ambiguity which makes parol evidence admissible. As the Court said in *Beisgen Es-*

*tate,* 387 Pa. 425, 431: "Where a latent ambiguity exists we have repeatedly held that parol evidence is admissible to explain or clarify the ambiguity, irrespective of whether the latent ambiguity is created by the language of the Will or by extrinsic or collateral circumstances: Logan v. Wiley, 357 Pa. 547, 55 A. 2d 366; Gerety Estate, 354 Pa. 14, 16, 46 A. 2d 250; Metzger's Estate, 222 Pa. 276, 71 A. 96. . ."

The attendant or surrounding facts and circumstances above recited and the issues raised thereby, were complicated by the following subsequent and unusual events.

Shortly before April 3, 1963, the Wachstetters decided to leave the Home and buy a home of their own. In order to enable them to purchase and pay for this home, the Home was willing to release them from their contract, and return to them the property which the Wachstetters had transferred to the Home, after deducting therefrom the cost of their board, lodging, care and expenses from the date of their admission. On April 3, 1963, the Home conveyed and transferred to the Wachstetters the balance of the property which they had originally transferred to the Home. At this time and in this transaction, the Wachstetters were represented by an attorney named Merrill L. Hassel, who in other matters had represented the Home.

Dyrness, who (we repeat) was called as a witness by the appellants, testified that on this occasion he called to the attention of the Wachstetters and of Hassel the fact that the Home's file contained the wills which they had respectively executed a little over a year earlier and in which they had left their residuary estate to the Home, subject to the above mentioned condition of caring for them. Dyrness's testimony on this point was pertinently as follows: "Q. Did you subsequently turn everything over to them? A. Yes, and Mr. Hassel prepared a release because the Home was left

without any assets to protect itself and at that time
their Wills were offered to them, thinking that since
they were released they might desire to make other
provisions. These we were instructed to hold and keep.
That is the reason we had the Wills because I believe
from repeated expressions from Mrs. Wachstetter, she
said she did not want either his or her relatives to
have any part of the estate, she wanted the Home to
have the full amount, so that is the reason they didn't
make other Wills and they remained at the Home. . . ..
Q. When they left the Home did you turn their Wills
over to them? A. They were offered, yes sir. Q. Did
you turn them over? A. No, Mr. Hassel was their at-
torney and he understood we had the Wills. I offered
them and we were told to keep them. Q. You were told
by Mr. Hassel to keep them? A. Yes, sir. BY MR.
REESE: Q. Just a couple questions. Dr. Dyrness first.
After the Will of Mabel S. Wachstetter was signed, and
that is the Will dated February 28, 1962, in whose pos-
session was it kept, or what was done with it after it
was signed? A. We did with it the same as we do with
all Wills of our guests. It was filed in the folder for
the Wachstetters. Q. Do I understand among the rec-
ords of the Home? A. Yes, sir. Q. When the Wachstet-
ter's, that is Mr. and Mrs. Wachstetter left the home
I understand they received certain papers and prop-
erty. What, if anything, was done with the Wills at
the time they left? A. At the time they left they had
Mr. Hassel as their attorney and I turned everything
over to them with the Wachstetter Wills, and in other
words, the fact he was representing them, therefore I
offered at that time to give the checks and all other
things that was not given into the hands of the Wach-
stetters to their legal counsel, Mr. Hassel, who was
there with them, and he said, do you want the Wills
and *the Wachstetter's said, we would rather have you
keep those.* . . . Q. But Mr. Hassel was present as coun-

sel of Mr. and Mrs. Wachstetter? A. Yes, sir. Q. And they again reiterated the statement they didn't want the Wills, the Home was to have the estate? A. That's right."

Thereafter the Wachstetters made a $5,000 deposit for the purchase of a new home but defaulted on their purchase agreement, and entered the Ephrata Nursing Home at Ephrata. Mrs. Wachstetter entered the Ephrata Home on May 15, 1963, and remained there until her death on August 1, 1963. Mr. Wachstetter had been at the General Hospital in Lancaster and came to the Ephrata Home from the hospital on June 10th, 1963. He died a week later.

We agree with the Court below that Mrs. Wachstetter's will made an absolute gift of all her property to the Home, subject to a condition subsequent. That condition was, as we have seen, that the Home should take care of her husband for the rest of his life.

We further agree that the Home's inability to perform the aforesaid condition subsequent because of the prior death of testatrix's husband did not invalidate the absolute legacy which she had given to the Home, subject as aforesaid. The impossibility of performance was in no wise due to fault on the part of the Home.

The subsequent events do disturb us. Why the Wachstetters would leave the Quarryville Home and purchase their own home and thereafter go to the Ephrata Home, and still wish to leave all their property at their death to the Quarryville Home is difficult to understand. However, appellants' own witness testified, as above mentioned, that in spite of leaving the Quarryville Home, Mrs. Wachstetter still wanted that Home to have all her estate, and this testimony of Dyrness* was believed by the auditing judge. As we have

---

* We disapprove of the practice of an officer of a charity drawing a will in which the charity is a substantial beneficiary.

often said, a Judge who sees and hears the witnesses is in a much better position than an appellate Court to determine the credibility of the witness. We must therefore conclude that the testatrix did not wish or intend to change or abrogate her will of February 28, 1962, and that under its terms and the conditions hereinbefore recited, the Home is entitled to all her residuary estate.

Decree affirmed. Each party to pay own costs.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I respectfully but strongly urge that the majority, in sustaining the present award, has misconstrued the instant will and read into it an intention on the part of the testatrix which finds no support in the instrument when considered in light of the circumstances surrounding its execution. I am compelled, therefore, to dissent.

By concerning itself primarily with the issue of whether the provision of the will dealing with the support and maintenance of the testatrix's husband is subject to a condition precedent or a condition subsequent, the majority has permitted the central question presented by this appeal to become obscured and, in the process, inadequately considered. There is no present need to consider the effect of that provision of the will, if the instrument, when considered in its entirety, discloses the existence of a condition which operates to defeat the residuary gift. Stated more particularly, if the residuary gift was *conditioned* on the continuance of the relationship between the testatrix and the appellee-home which prompted the bequest, there is no need to proceed further. Given such a condition, the fact that the testatrix and her husband had long since severed any connection with the appellee-home would be sufficient to defeat the gift irrespective of the effect to be given to the language of the instrument dealing with

the support and maintenance of testatrix's husband. In my view, the will, when construed in light of the circumstances surrounding its execution, discloses the existence of just such a condition. Since that condition was not realized, the gift failed and there is no need to consider that provision upon which the majority principally relies.

In sustaining the instant award, the majority assumes that an absolute gift was intended, subject to a condition subsequent which was displaced by the fact that events beyond the control of the appellee-home made its realization impossible. Such an assumption finds no support in fact or reason and leads to a result which is completely unwarranted. The facts and circumstances surrounding the execution of the instant will, rather than supporting an intent on the part of the testatrix to make such a gift, point to quite a contrary conclusion. They more readily and reasonably suggest that the testatrix impliedly conditioned the challenged gift upon the continuance of the relationship which prompted and was the quid pro quo for the execution of the will. When the testatrix and her husband departed from the appellee-home and terminated any connection therewith, the condition under which the gift was to be made no longer was capable of realization and the gift failed.

Such a conclusion is compelled by an examination of the record. That examination reveals nothing to suggest an intent, charitable or otherwise, on the part of the testatrix to benefit the appellee-home when she executed the will. To the contrary, the record reveals that the will was executed solely and exclusively in response to a requirement imposed by the home as a condition of entry thereto. The execution of the will was merely one aspect of a business transaction in which the testatrix and the home "bargained" over the price of entry to the home. That transaction included the execution

of a contract between the parties which provided for the conveyance of the testatrix's property to the home and pursuant to which the instant will was made. Thus, the testatrix executed the instrument, not out of any independent desire to benefit the appellee-home, but merely in fulfillment of a contractual obligation.

Under such circumstances, I am unable to conclude that the testatrix, at the point in time when the will was executed, entertained an intent to make a gift which went beyond the business arrangement between the parties. The only intention that I am able to infer at that point in time was an intention to make the required residuary gift, subject to the condition that either she or her husband, or both, continued to be provided and cared for by the home, an intention which followed the contour of the contractual arrangment between the parties. When that relationship was severed and the contract terminated, a set of circumstances were created far different from those intended to be the operative basis of the gift. Under such circumstances, the only reasonable conclusion is that the gift was impliedly conditioned on a relationship which was terminated by the departure of the testatrix and her husband from the appellee-home. The departure of the testatrix and her husband from the home, the rescission of the contract, and their entry into another home created a factual circumstance other than that under which the gift was intended to vest. Accordingly, the gift to the home failed and the award of the court below should be reversed.

Mr. Justice JONES joins in this dissenting opinion.