Thomas Estate.

Argued April 18, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*D. Scott Kelley*, with him *Kelley & Lieberman*, for appellant.

*Robert S. Gawthrop, Jr.*, with him *Gawthrop & Greenwood*, for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, October 16, 1974:

Rebecca B. Thomas, an octogenarian spinster, died on January 12, 1971, leaving a last will and testament dated May 24, 1966. Following issuance of letters testamentary on January 28, 1971, Central Penn National Bank, an executor of the estate, filed a statement of proposed distribution and a petition for adjudication

in accordance with a first accounting with the Court of Common Pleas, Orphans' Court Division, of Chester County.[1]

This appeal arises from a decree of that court dismissing objections and exceptions of Wilbur D. Thomas, a nephew of the decedent and a beneficiary under the will, to the adjudication and the statement of proposed distribution, in regard to a determination of title and ownership of funds in a savings account and to shares of common stock of the Philadelphia Electric Company.

Paragraph Eighth of the will,—the basis of this controversy and entitled "Gift to Wilbur Detweiler Thomas,"—provides: "I give to my nephew, Wilbur Detweiler Thomas, all of the shares of common stock of Delaware Power & Light Company, and Pennsylvania Electric Company, and one-half of the balance of my savings in Malvern Savings and Loan Company, Paoli, Pennsylvania, at my death. If he does not survive me I give such property to his then living issue in equal shares, per stirpes." Under Paragraph Ninth of the will the residue of the estate is given to decedent's other nephew, C. Roger Thomas, the present appellee, or to his then living issue in equal shares, per stirpes, had he not survived her.

The record of evidence and testimony before the Orphans' Court reveals that on the date of her death, Miss Thomas owned 1050 shares of Philadelphia Electric Company common stock and seventy shares of Pennsylvania Electric Company preferred stock, ownership of the latter block not being in issue here. No common stock of the Pennsylvania Electric Company

---

[1] By merger, which became effective after the execution of the will, Upper Main Line Bank, one of the co-executors named in the will, became a part of Central Penn National Bank. The other co-executor was the scrivener of the will.

was publicly held, and counsel for both parties stipulated that at all times pertinent to this contest no such stock was owned by the decedent. The evidence also reveals that, in regard to the savings account mentioned under Paragraph Eighth of the will, on September 22, 1961, almost three and one-half years following opening of the account in her own name, decedent transferred ownership to herself and appellee, C. Roger Thomas. On April 4, 1966, decedent revoked and cancelled that account and transferred it to herself and appellant, Wilbur D. Thomas. Subsequently, on January 19, 1967, she and the appellant signed a transfer of account and membership to herself and appellee. No new application for membership in a savings account in the Malvern Federal Savings and Loan Association was made thereafter by the newly designated account holders.[2]

Upon consideration of the evidence, the Orphans' Court held that the clause in Paragraph Eighth of the will which bequeathed Pennsylvania Electric Company common stock to the appellant constituted a latent ambiguity and was void for uncertainty. It decreed, therefore, that the shares of Philadelphia Electric Company stock owned by the decedent and included in her estate would pass not to appellant under Paragraph Eighth, but rather to appellee under the residuary clause of Paragraph Ninth. The court below further decreed that it lacked jurisdiction to determine title to the savings account. Appellant alleges error in the failure of the Orphans' Court to adjudicate ownership of the savings account, error in its resolution of a

---

[2] Prior to the decision of the Orphans' Court, appellant filed formal objections of record to the awarding of the shares of Philadelphia Electric Company common stock which decedent did own at the time of her death and of the funds in the savings account to anyone other than himself.

simple misdescription of the common stock and error in the allowance of testimony by the appellee in violation of the Dead Man's Statute, Act of May 23, 1887, P. L. 158, §5(e), 28 P.S. §322, in regard to the stock, the savings account and the decedent's intent to benefit him.

The initial question at issue in this appeal is whether the Orphans' Court possessed jurisdiction to adjudicate ownership of and title to the savings account. We recognize that the jurisdiction of Orphans' Courts in this Commonwealth is entirely of statutory origin. *See, e.g., Rogan Estate*, 394 Pa. 137, 145 A.2d 530 (1958). Section 711 of the Probate, Estates and Fiduciaries Code of July 1, 1972, 20 Pa.C.S. §711, provides in Subsection (17), entitled "Mandatory exercise of jurisdiction through orphans' court division in general," that Orphans' Courts *must* entertain and resolve questions concerning: "The adjudication of the title to personal property in the possession of the personal representative, or registered in the name of the decedent or his nominee, or alleged by the personal representative to have been in the possession of the decedent at the time of his death." In construing essentially identical provisions of the now repealed Orphans' Court Act of August 10, 1951, P. L. 1163 (repealed 1972), this Court has consistently held that an Orphans' Court is vested with exclusive jurisdiction to adjudicate the ownership of personalty registered in the name of a decedent at the time of his death, whether in his name alone or in the name of other persons and/or the decedent. *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 197 A.2d 721 (1964); *Gudleski v. Liberty Bank of Mount Carmel*, 405 Pa. 441, 176 A.2d 651 (1962); *Hallman v. Carr*, 404 Pa. 216, 172 A.2d 160 (1961); *Rogan Estate, supra; Balfour v. Seitz*, 392 Pa. 300, 140 A.2d 441 (1958); *Webb Estate*, 391 Pa. 584, 138 A.2d 435 (1958). In the instant case, appellant seeks a de-

termination of the ownership of a savings account registered in the names of the decedent and the appellee, as a legatee of that account under the will. Such adjudication is clearly within the statutorily delineated jurisdiction of the Orphans' Courts, and the Orphans' Court of Chester County should make such determination of ownership of the savings account.

The second issue raised for our consideration concerns the shares of Pennsylvania Electric Company stock referred to in Paragraph Eighth of the will. Since the decedent had never owned any such stock, the court below concluded that a latent ambiguity arose, that upon consideration of extrinsic evidence, the bequest effectuated a nullity and that the doctrine of misdescription, urged as applicable by the appellant, would not permit passage of title to the contested Philadelphia Electric Company shares of stock under Paragraph Eighth. We are of the opinion that this result is correct.

Where the words of a will are on its face plain, consistent and certain, and where the uncertainty arises from extrinsic facts or circumstances in relation to the property bequeathed, there exists by definition a latent ambiguity. This Court has repeatedly held that where a latent ambiguity does exist, parol evidence is admissible to explain or clarify the ambiguity. *Wachstetter Will*, 420 Pa. 219, 216 A.2d 66 (1966); *Beisgen Estate*, 387 Pa. 425, 128 A.2d 52 (1956); *Logan v. Wiley*, 357 Pa. 547, 55 A.2d 366 (1947); *Gerety Estate*, 354 Pa. 14, 46 A.2d 250 (1946). A court may not, however, under guise of construction or under general powers of equity assume to correct or redraft the will in which the testator has expressed his intentions. *Reinheimer's Estate*, 265 Pa. 185, 108 A. 412 (1919); *see Benson Estate*, 447 Pa. 62, 285 A.2d 101 (1971); *Beisgen Estate,* supra. It is well-settled that: " ' A testator's intent, unless unlawful, shall prevail; that intent shall be ascertained

from a consideration of (a) all the language contained in his will, and (b) his scheme of distribution, and (c) the circumstances surrounding him at the time he made his will, and (d) the existing facts; and (e) canons of construction will be resorted to only if the language of the will is ambiguous or the testator's intent is for any reason uncertain. . . .' " *Carter Estate*, 435 Pa. 492, 496-97, 257 A.2d 843, 845 (1969), *quoted in Benson Estate*, 447 Pa. at 62, 285 A.2d at 104 and *Pearson Estate*, 442 Pa. 172, 180, 275 A.2d 336, 339 (1971).

That the testatrix did not own the shares of Pennsylvania Electric Company common stock referred to in Paragraph Eighth of the will evidences rather a misdescription of her estate than a latent ambiguity. Properly received testimony of the scrivener established that inclusion of that security non-existent within her estate arose solely due to his own error in transcription of the will, since he had neither received instructions nor corresponded with the testatrix in regard to such shares of stock.

We are unable to determine what the testatrix intended by her bequest of "all of the shares of common stock of . . . Pennsylvania Electric Company . . .," a non-existent security. She may have intended to describe Pennsylvania Electric Company preferred shares; but nothing in the record indicates any intent to bequeath such shares directly to the appellant. On the contrary, Paragraph Seventh of the will unambiguously bequeaths the Pennsylvania Electric preferred to trustees with the remainder to the appellant. She may have intended to describe Philadelphia Electric Company common stock. However, nowhere in her previous correspondence with or in her instructions to the scrivener had the testatrix directed any disposition by name of her Philadelphia Electric stock. The record is bare of any manifestation of intent on the part of the testatrix to give those shares to the appellant.

The record completely fails to establish what she intended by the misdescribed security. Accordingly, we may not presume to redraft Paragraph Eighth in accordance with appellant's theory of misdescription. We conclude that we are unable " 'to penetrate through the obscurity in which the testat[rix] has involved [her] intention' " in the bequest of the common stock of Pennsylvania Electric Company in Paragraph Eighth; therefore, " 'the failure of the intended disposition is the inevitable consequence'." *Wise v. Rupp*, 269 Pa. 505, 508-09, 112 A. 548, 549 (1921), quoting Jarman on Wills 453. The Orphans' Court correctly decided that title to the testatrix' shares of common stock in the Philadelphia Electric Company will pass to the appellee under the residuary clause of Paragraph Ninth of the will.

Appellant contends finally that the Orphans' Court committed a clear violation of the Dead Man's Statute, Act of May 23, 1887, P. L. 158, §5(e), 28 P.S. §322, in permitting the appellee and his wife to testify as to appellee's conversations with the decedent with reference to the shares of stock and the savings account mentioned in Paragraph Eighth and to decedent's intent to benefit him.[3] This contention is without merit.

---

[3] The Dead Man's Statute provides in pertinent part: "Nor, where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased or lunatic party, be a competent witness to any matter occurring before the death of said party or the adjudication of his lunacy . . . unless the issue or inquiry be devisavit vel non, or be any other issue or inquiry respecting the property of a deceased owner, and the controversy be between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses."

Where opposing parties in a controversy involving merely the testamentary distribution of property present their claims under the will, either party is competent under language of the Statute to testify as to prior conversations with the testator regardless of any individual interest possessed by them in the testator's property. *Moore Estate*, 439 Pa. 578, 266 A.2d 641 (1970); *Gerlach Estate*, 364 Pa. 207, 72 A.2d 271 (1950); *Dalbey's Estate*, 326 Pa. 285, 192 A. 129 (1937). Moreover, where one spouse is competent to testify, the other is equally competent. *Moore Estate, supra.* The Orphans' Court properly admitted the testimony of appellee and his wife into evidence.

Decree affirmed in part and reversed in part. Case remanded for further proceedings consistent with this opinion. Each party to pay own costs.

Mr. Justice POMEROY and Mr. Justice NIX concur in the result.