## Cohen Estate

778

*Fox, Differ, DiGiacomo & Lowe* and *Charles R. Weiner*, for petitioners.

*Henderson, Wetherill & O'Hey, Alonzo R. Horsey, Malis, Malis & Malis, High, Swartz, Roberts & Seidel*, for respondents.

TAXIS, P. J., January 7, 1966.—This matter was initiated by the petition of Charles R. Weiner, Esq., praying that this court direct the executors of the above estate to authorize the Girard Trust Bank, escrow depository, to turn over the sum of $274,100 now in escrow with it to petitioner.

The petition was filed on October 29, 1965, and the court directed that notice of the hearing thereon, scheduled for November 19, 1965, be published in the Montgomery County Law Reporter and in a Philadel-

phia newspaper of general circulation. The executors, as respondents, appeared and filed an answer, and also gave notice by letter to all known creditors in the estate of the pendency of the hearing and its subject matter. The scheduled hearing was continued until November 26, 1965, and after presentation of a memorandum of law on behalf of the petition, this court granted its prayer by an order entered December 14, 1965. The present opinion is to place of record the reasons for the entry of that order.

In substance, the petition recited that Charles R. Weiner and decedent were associated in the practice of law in Philadelphia County. Said association had commenced on April 24, 1964, by written agreement. Decedent's practice, for a number of years prior to his death, centered about his representation of the Nationwide Insurance Company and their affiliates, chiefly in the defense of casualty claims filed against insureds under Nationwide policies. In pursuance of that agreement, until decedent's death, which occurred on March 5, 1965, petitioner and Mr. Cohen worked toward the gradual operational and physical merger of their respective law firms, which, however, was never fully accomplished.

After decedent's death, petitioner continued for a time to protect the legal interests of Nationwide Insurance Company in some 1,500 files that were open in his office at that time. When Nationwide obtained new counsel, petitioner and Nationwide entered into negotiations concerning payment for work that had been completed by the firm prior to decedent's death, and the ensuing termination of their attorney-client relationship. These negotiations culminated in an agreement by which Nationwide agreed to pay the sum of $274,100 in full discharge of all of its obligations; such payment, however, was made jointly to the executors and petitioner in escrow, so that Nationwide

and the executors could be protected from conflicting claims of decedent's creditors or prior assignees. The escrow agreement specifically provided that such funds were to be released to Weiner or to the executors only upon the order of this court, and the present petition was brought to obtain such an order.

The association between decedent and petitioner was established by their agreement dated April 24, 1964. In part, it contained the following provisions:

" . . .

"3. Cohen will make available to Weiner during the term of this association, all information, records, data and other items which may be reasonably necessary for Weiner and his associates to properly represent clients procured by Cohen for defense work, including but not limited to the work for and on behalf of Nation-wide Insurance Company.

"4. Weiner agrees to the following:

" (A) He will loan to Cohen . . . the sum of $100,-000 in cash.

" (B) He will pay to Cohen one-third of the gross fees received for negligence defense work from all Insurance Company clients procured by Weiner and Cohen, including but not limited to Nationwide Insurance Co. Such payments shall be made on a monthly basis in amounts equal to one-fourth of the gross income received from said clients during said month, and adjustments necessary to achieve the one-third of gross fees hereinabove set forth shall be made at the end of the fiscal year in order to complete the agreed annual compensation.

" . . .

"5. Separate books of account shall be kept by Weiner and entries made therein of all moneys paid and received and all other transactions involving the contents of this Agreement. Said books of account together with all correspondence, papers and other documents

shall be kept in the office of Weiner, by Weiner's employees, and shall be at all times open to the examination of Weiner and Cohen.

"6. This Agreement and the arrangements hereunder shall continue for a term of five years, and thereafter until dissolved by mutual consent of the parties hereto. In the event of the termination of this Agreement either by loss of Nationwide Insurance Company as a client or by agreement of the parties, it is agreed that Cohen will waive his rights under Paragraph 4-(B) above until the sum of $100,000.00 has been paid to Weiner, unless Cohen assumes the liabilities incurred by Weiner.

"7. All receipts from Nationwide Insurance Co., and other defense clients for whom work has been completed and previously billed by Cohen or where the file has been concluded and in the process of billing shall belong solely to Cohen. All other receipts from Insurance Company clients for whom defense work has been or will be undertaken after the date of this Agreement shall be deposited in an account or accounts to be maintained by Weiner or his firm for said purposes and disbursements therefrom shall be at the sole discretion of Weiner subject only to the provisions of this Agreement and maintaining a reasonable reserve for any necessary adjustment under Paragraph 4(B).

". . .

"9(A) In the event of the death of either of the parties hereto, the arrangement hereunder shall be continued to the end of the calendar year in which such death occurs. The estate of the Deceased party shall share in the proceeds of the business, which is the subject of this Agreement, for the balance of such year in the same way the deceased party would have shared, had he survived to the end of such year.

". . . (D) It is understood by and between the parties hereto that upon the death of either, the defense

practice hereinabove referred to, subject only to the obligations to make the payments hereinabove provided, shall revert solely and completely to the survivor".

Petitioner claims ownership of the present escrow fund under the applicable terms of this agreement. The executors are unwilling to turn over the funds in question without an order of this court, not only because of the specific requirement therefor in the escrow agreement, but also because the estate is grossly insolvent, and they have not had any substantial opportunity to determine the respective rights and priorities that have arisen or may arise between various claimants. In their answer, they, in effect, simply demand proof of the allegations of the petition.

The only affirmative opposition to the petition came from National Factors, Inc., who claimed a prior right in all fees due Max E. Cohen from Nationwide by virtue of an assignment to them of such fees, dated December 4, 1963. National Factors, Inc., filed a statement of claim setting forth the pertinent facts of its claim and alleging that the unpaid balance due it was $22,916.71, and, in addition, by preliminary objections to the petition, also questioned the jurisdiction of this court to determine this matter. It appears that these latter issues should be considered first, since lack of jurisdiction or an effective prior assignment would render it unnecessary to pass upon the substantive allegations of the petition.

As to the jurisdiction, the petition, as filed, contains no specific reference to any law or statute upon which it is based. However, in petitioner's answer to the preliminary objections, he sets forth that the matter is properly before the court under section 301(13) of the Orphans' Court Act of August 10, 1951, P. L. 1163, as amended, 20 PS §2080.301(13). That enactment confers exclusive jurisdiction upon this court in "The

adjudication of the title to personal property in the possession of the personal representative, . . ."

The present petition stands or falls with the determination of whether the fund in question is the property of petitioner or of the estate. If it belongs to Weiner, it must be turned over to him; if it belongs to the estate, petitioner is relegated to a place among decedent's creditors. It is clear from the agreement between petitioner, the executors and Nationwide that all the parties thereto recognized that a conflict might arise concerning the ownership of, or other rights in, the fund in question, and all agreed to submit the matter to this court for determination. The act does not require that the possession of the personal representatives be sole and exclusive or physical; it is certainly sufficient that the executors here have a contractual right and power to control the disposition of the fund. The aforesaid act broadened the jurisdiction of this court in this area, and should be so construed. It was " 'intended to obviate, whenever possible, a preliminary dispute as to whether the Orphans' Court has jurisdiction to determine the title to the disputed property'. [Footnote] 'Explanatory Comment to §301(13) from the Report of the Joint State Government Commission of the General Assembly of Pennsylvania' ": Webb Estate, 391 Pa. 584, 587.

Counsel for National Factors, Inc., has also pointed out that disputes as to title to property must be determined by a jury, under section 745(a) of the Orphans' Court Act of 1951, supra, 20 PS §2080.745(a). Under that act, a substantial dispute of fact must be resolved by a jury upon the demand of any party in interest, and the verdict is as binding on this court as a similar verdict would be in common pleas. Assuming, without holding, that its claim as a creditor renders National Factors, Inc., a party in interest for this purpose, nevertheless there is no substantial factual dispute.

The question is one of law, to be decided by the proper interpretation of the provisions of the agreement between petitioner and decedent and the other uncontroverted facts in the record. I, therefore, find that this court has jurisdiction in the present case.

The next matter to be decided is that of the priority of the interests of the respective claimants to the fund. It is not denied that decedent assigned the fees to be received by him from Nationwide to National Factors, Inc., prior to the execution of his agreement with petitioner. This assignment was made to secure, in part, a loan made by National Factors, Inc., to decedent. It is also conceded that no financing statement was ever filed under the provisions of the Uniform Commercial Code by National Factors, Inc.; nor was any recording or other action ever taken which would have placed subsequent assignees or purchasers on notice in any way that decedent's accounts were encumbered.

A security interest may attach to accounts receivable of the present sort, under the provisions of the Uniform Commercial Code of April 6, 1953, P. L. 3, sec. 9-102, 12A PS §9-102. A security interest attached to these accounts upon their assignment to National Factors, Inc., for value: Uniform Commercial Code, sec. 9-204(1). However, the failure to file a financing statement prevented perfection of the security interest (Uniform Commercial Code, sec. 9-302), and, consequently, it is subordinate to a subsequent transfer to an innocent third party: Uniform Commercial Code, sec. 9-301. Moreover, the record indicates that Mr. Weiner did all that he could to determine whether any interest prior to the one which decedent proposed to create in his favor was in existence, and had the assignment to National Factors, Inc., been filed, he would have found it. Thus, the assignment to National Factors, Inc., is subordinate to any interest or rights which petitioner has in this fund.

We come now to the principal issue, which is the nature of the interest which Charles R. Weiner has in the fund. By the agreement of April 24, 1964, Max E. Cohen agreed that all fees received from Nationwide for work done subsequent to the commencement of the association should be deposited to Weiner's credit and should be handled exclusively by him, subject only to his duty to pay one third thereof, after certain adjustments, to Cohen. Complete possession of all receipts was lodged in Weiner; no funds were to be kept by decedent; all disbursements were to be at Weiner's sole direction; all books and accounts were to be maintained by Weiner; and in the case of the death of either, the survivor became the sole owner of the entire practice.

Such provisions are inconsistent with any notion that Weiner was a creditor of Cohen, and, consequently, now of his estate. A creditor is one to whom money or other property is due, upon certain conditions and at certain times, from another, who is his debtor. From the standpoint of ownership, however, the debtor owns the money or property prior to payment. Indeed, the act of payment usually causes a change of ownership from debtor to creditor. Here, decedent agreed that all rights to receive, possess and otherwise control the funds were in Weiner, subject only to a requirement that he pay Cohen according to the terms of their agreement. It was Cohen, in short, who was the creditor of Weiner, and the rights of his estate can rise no higher.

It is evident from the record, moreover, that as a creditor, the estate of Max E. Cohen, deceased, is entitled to nothing from this fund, and could not justify its retention in order to secure any such interest. Although the estate appears to possess a right to approximately one third of the sum in escrow, this right must be diminished, under paragraph 4(c) of the agree-

ment (not heretofore set out), by the rental payments made by petitioner in 1965 on Cohen's former office space amounting to several thousand dollars, and also by approximately $87,000 still due Weiner on account of his loan to Cohen at the inception of their association. In addition, the record shows that, under financial stress, Mr. Cohen diverted at least $90,000 in fees from Nationwide during the period of his association with Weiner, and, therefore, it does not require computations accurate to the penny to see that nothing remains due the estate. It accordingly appears that the escrow fund is the property of petitioner and not of the estate, that the estate has no claim against it as creditor or otherwise, and that it is not subject to any interest prior to petitioner's, and for these reasons, the court entered its aforesaid order of December 14, 1965, directing the executors to authorize the escrow depository to turn the fund over to petitioner.