K.A.O.P. COMPANY, Respondent,

v.

MIDWAY NATIONAL BANK OF ST. PAUL, et al., Appellants.

No. C7–85–32.

Court of Appeals of Minnesota.

Aug. 13, 1985.

Jan Stuurmans, Stuurmans & Karan, P.A., Minneapolis, for respondent.

John M. Mulligan, Mulligan & Bjornnes, Minneapolis, for appellants.

Heard, considered and decided by RANDALL, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

LANSING, Judge.

This case arises because attorney James F. McGovern granted security interests in the attorney's fees he anticipated receiving from his law firm's participation in the Corrugated Container anti-trust litigation to different secured parties: first to Charles Engelson and ultimately to Engelson's lender, the Midway National Bank, and second to K.A.O.P. Co. The trial court ruled that K.A.O.P. is entitled to priority because it filed a financing statement and the bank did not. We affirm.

## FACTS

The trial court made detailed and accurate findings and conclusions, which have greatly facilitated appellate review.

James McGovern is an officer and shareholder of Ski-Lokr, Inc. In October 1979 Ski-Lokr entered into an investment agreement with K.A.O.P. which provided that K.A.O.P. would purchase from Ski-Lokr a $119,000 convertible debenture and acquire certain other investment rights in Ski-Lokr stock.

Beginning in November 1979 Midway National Bank entered into a series of complex loan transactions with Charles Engelson, a business associate of McGovern's. The collateral for the first loan included a $130,000 promissory note executed by McGovern in favor of Engelson. McGovern granted Engelson a security interest in "all amounts due from account receivable owed to debtor by McGovern, Opperman & Paquin including all amounts from corrugated container anti-trust case" to secure the promissory note. Engelson granted Midway National Bank a security interest in McGovern's note.

On April 8, 1980, McGovern executed a new security agreement in favor of Engelson covering "All amounts due from account receivable owed to debtor by McGovern, Opperman and Paquin including all amounts from Corrugated Container Antitrust case." The security interest was expressly granted to Engelson to secure a promissory note in the amount of $650,000. Engelson granted Midway National Bank a security interest in McGovern's second promissory note.

On August 8, 1980, McGovern granted Midway National Bank a security interest in

[a]ll distributions of income in excess of normal draws or salary due to [McGovern] from McGovern, Opperman & Paquin during any calendar year in which McGovern, Opperman & Paquin receives payment of attorneys' fees from the Corrugated Container Anti-trust case venued in United States District Court, Southern District of Texas.

This interest was granted to secure payment of "all amounts due or to become due Midway National Bank or Charles Engelson."

On the same day McGovern also executed a security agreement called "Pledge by One Other Than Borrower" granting to the bank, in consideration of loans made to Charles Engelson, a security interest in the "Security Agreement dated August 8, 1980 covering amounts due to James F. McGovern from McGovern, Opperman & Paquin." Although Midway National Bank prepared a financing statement, neither the bank nor Engelson ever filed a financing statement with the Secretary of State's office.

In October 1981 James McGovern withdrew from his law firm. The withdrawal agreement provided that the firm would pay to McGovern his share of the attorney's fees to be awarded in the class action.

In the meantime, Ski-Lokr defaulted on the debenture issued to K.A.O.P. On December 30, 1981, Ski-Lokr, McGovern, and K.A.O.P. entered into a new repayment

agreement, which provided that K.A.O.P. would refrain from taking further action on the defaulted agreement, and in return, Ski-Lokr and McGovern would "jointly and severally" pay $10,000 per month to K.A.O.P. beginning in January 1982. The agreement also provided that "McGovern agrees that he shall be directly liable to KAOP for the timely payment of the settlement amounts." To secure his obligation, McGovern granted K.A.O.P. a security interest in:

> [a]ll rights of McGovern, whether in the form of accounts receivable, inchoate accounts receivable, notes receivable or otherwise, to receive * * * any fees * * in connection with that class action lawsuit filed against certain manufacturers of corrugated boxes, and known as "in re Corrugated Container Anti-Trust Litigation."

K.A.O.P.'s attorney performed a U.C.C. search for other financing statements covering James McGovern. As of February 9, 1982, no prior financing statements had been filed. K.A.O.P. filed a financing statement and the security agreement with the Secretary of State on February 12, 1982.

Engelson defaulted on his loans with Midway Bank, and the bank proceeded against the collateral. In March 1983 and February 1984 McGovern's former law firm paid to Midway National Bank the attorney's fees owed to McGovern totaling $78,421.23. The bank agreed to defend this action and to indemnify the law firm.

At trial the parties litigated three issues on a stipulated record: (1) whether the anticipated attorney's fees were "wages" exempt from article 9 or an "account" within its scope; (2) whether the security interest from McGovern to K.A.O.P. was given for "value," and (3) whether the bank's security interest was exempt from the filing requirement by virtue of Minn.Stat. § 336.9–302(1)(e). The trial court concluded that the attorney's fees constitute an "account" as defined in Minn.Stat. § 336.9–106 (any right to payment for services rendered which is not evidenced by an instru-

ment or chattel paper), and Midway National Bank does not dispute this conclusion on appeal. *See also In re Cohen's Estate,* 38 Pa. D. & C. 2d 777 (1966). The trial court concluded that K.A.O.P.'s security interest was supported by adequate consideration and that the bank's security interest was not exempt from filing.

### ISSUES

1. Was the security interest that McGovern granted to K.A.O.P. given for value?

2. Is Midway National Bank's security interest in the collateral exempt from filing under Minn.Stat. § 336.9–302(1)(e)?

### ANALYSIS

#### I

■ A security agreement is not enforceable unless value is given for it. *See* Minn.Stat. § 336.9–203(1)(b). A person gives value for rights if they are acquired as security for a pre-existing claim or in return for any consideration sufficient to support a simple contract. *See* Minn.Stat. § 336.1–201(44)(b) and (d). The bank argues that McGovern's pledge of attorney's fees to K.A.O.P. was gratuitous because Ski-Lokr, not McGovern, was obligated on the debenture. The trial court's memorandum says:

> While it is true that the investment agreement [between Ski-Lokr and K.A.O.P.] contains no personal guarantee of James McGovern, this does not mean that the later repayment agreement * * lacked consideration. McGovern is an officer and shareholder of Ski-Lokr, the party in default under the investment agreement. K.A.O.P.'s agreement to defer taking action on the default and agreeing to a deferred payment schedule, was adequate to support the [transaction].

The trial court correctly concluded that McGovern's pledge of attorney's fees to secure a pre-existing debt of the corporation was supported by consideration on both sides.

## II

■ Article 9 of the Uniform Commercial Code applies to both security interests in accounts and to outright sales of accounts because of the difficulty in distinguishing between a security transfer and a sale. U.C.C. § 9–102 (1978) comment 2. The filing requirement therefore applies to both security transfers and sales. U.C.C. § 9–302 (1978) comment 5. A limited exemption from the filing requirement is contained in Minn.Stat. § 336.9–302, which provides:

(1) A financing statement must be filed to perfect all security interest except the following:

\* \* \* \* \* \*

(e) *An assignment of accounts* which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts of the assignor.

(Emphasis added). The bank contends that its security interest is exempt from filing under this provision and that Engelson, rather than McGovern, is the assignor.

Comment 5 to § 9–302 further provides:

The purpose of the subsection (1)(e) exemption is to save from *ex post facto* invalidation casual or isolated assignments: some accounts receivable statutes were so broadly drafted that all assignments, whatever their character or purpose, fell within their filing provisions. Under such statutes many assignments which no one would think of filing might have been subject to invalidation. \* \* \* Any person who regularly takes assignments of any debtor's accounts should file.

This exemption was "never intended to provide an escape hatch for negligent institutional financiers" and is applicable "only when an outright sale of an account occurs, or the security interest is granted to an assignee who is not regularly engaged in financing activities." *Valley Bank of Nevada v. City of Henderson,* 528 F.Supp. 907, 914 (D.Nev.1981).

The trial court found that Midway bank took McGovern's security interest "in the course of an ordinary financing transaction commonly engaged in" by the bank. The bank argues that this finding is erroneous, but offers no cogent reason why this transaction differs from financing arrangements for other clients. The trial court's finding is clearly supported by the record.

In addition, the security agreements were executed on standard U.C.C. forms and, by their terms, profess to grant security interests rather than an outright assignment. Although K.A.O.P.'s attorney argued somewhat perversely that there is no material difference between a security interest and an assignment in this context, we question whether the filing exemption in § 336.9–302(1)(e) applies to the bank absent an outright assignment of McGovern's right to the fees. *See id.*

Even if the transaction were considered an assignment, we conclude that the bank's interest is not exempt from filing under § 336.9–302(1)(e). One commentator has written that the filing exemption provides more a "line of defense" in litigation than a guide for prospective action, because:

At the time of taking an assignment no assignee can know that this assignment, together with others which may be made \* \* \* in the future, will not [transfer a significant part] of the assignor's receivables; certainly no sane assignee will take the risk that he could convince a judge \* \* \* of his own insignificance. All right-minded assignees will, therefore, file. \* \* \* [T]here is surely nothing wicked about paragraph (e); it is carefully drafted so that no assignee, engaged in a regular course of financing, will ever be tempted to rely on it in order to avoid a filing which ought to be made \* \* \*.

1 G. Gilmore, *Security Interests in Personal Property* § 19.6, at 537–38 (1965).

In *H. & Val J. Rothschild, Inc. v. Northwestern National Bank of Saint Paul,* 309 Minn. 35, 242 N.W.2d 844 (1976), the supreme court said the test for determining whether the exemption applies is whether

the assignment is "casual and isolated or whether it is part of the ordinary course of financing." *Id.* at 39, 242 N.W.2d at 847. The court held that because Rothschild had been assigned more than one third of the assignor's contract rights at the time the assignments were made and because it was engaged in the regular business of interim financing, it could not qualify for the filing exemption in § 336.9–302(1)(e). *Id.* at 40, 242 N.W.2d at 848.

As noted above, the bank took this pledge of collateral in the ordinary course of financing. The parties had no knowledge of the total award of attorney's fees or the amount of McGovern's share because the decision on the amount of the fees was still pending before a federal trial court. Therefore, the bank could not prove how that account compared to either Mc-Govern's or Engelson's outstanding accounts. The trial court's finding that the bank failed in its burden of proof is correct.

 The bank implies that K.A.O.P. had prior notice of its security interest. However, the fact that the holder of a junior but perfected security interest may have originally believed that another party had priority does not change the effect of the first-to-file rule. *See Rothschild,* 309 Minn. at 41, 242 N.W.2d at 848. The bank argues that it did not file because it "had received assurances that its priority was assured from the law firm." In *Rothschild,* however, the court said that when an assignee knows that the assignment has not been filed, it cannot reasonably rely on statements by others regarding assumptions of priority. *Id.* K.A.O.P.'s perfected security interest has priority over Midway National Bank's more senior but unperfected security interest.

## DECISION

The trial court did not err in concluding that K.A.O.P.'s security interest is supported by adequate consideration and has priority despite its junior status because K.A.O.P. filed a financing statement and Midway bank did not.

Affirmed.