J-S24020-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF CHERYL A. SLUSARICK, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: ANGELA M. DANNER | : : : : : : : | |
| | : | No. 1398 WDA 2024 |

Appeal from the Order Entered October 11, 2024
In the Court of Common Pleas of Cameron County Orphans' Court at
No(s): 1219-0014

BEFORE: NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:         **FILED: October 7, 2025**

Angela M. Danner appeals from the order overruling her objections to the amended first and final account and proposed schedule of distribution for the Estate of Cheryl A. Slusarick ("the Estate"). The order also approved and adopted the first and final account of the Estate. We affirm.

James A. Slusarick ("James") and Brian S. Slusarick ("Brian") (collectively, "Co-Executors") are the stepsons of Cheryl A. Slusarick ("Decedent") and co-executors of the Estate. The beneficiaries of the Estate include Co-Executors, their sister, Leann Manginell, and Decedent's nieces, Courtney Hostetlar and Danner. In December 2020, Co-Executors filed a first and final account of the Estate. Danner filed objections to, among other things: the list of principal receipts as incomplete because the account did not include insurance proceeds from more than one source and it did not list the house contents; disbursements without proof of payment; all credit card debt,

because Co-Executors failed to negotiate with the credit card companies; the executor fee, as excessive; the payment of $900 to James for lawn maintenance services; and the payment of $625 to St. Mark Cemetery, which Danner alleged was not an expense of the Estate. Objections to First and Final Account and Proposed Schedule of Distribution, filed Jan. 15, 2025, at 2. The trial court held a hearing on the objections.

James testified that Decedent's home had the "typical home furnishings." N.T., Nov. 3, 2021, at 6. He stated that Decedent had borrowed the dining room table from Debbie Hallowell, and Hallowell wanted it back. He said that after discussions with all beneficiaries, all agreed that she should have it. *Id.* at 7. He said that Decedent's boyfriend had been living in Decedent's home and took the items that had been his, including the living room furniture, a grill, and a tractor. *Id.* at 8. James believed he discussed this with the other beneficiaries and that they were in agreement that the boyfriend could have the items. *Id.* He stated that he gathered the remaining items into Decedent's living room, and allowed the beneficiaries to go through and take what they wanted. *Id.* at 7-8. James testified that his sister Leann did not want anything, and that he received a daybed that had been his grandmother's bed and a coffee table and end tables that had belonged to his father before his father's marriage to Decedent. *Id.* at 10. Brian took a washer and dryer. *Id.*

James testified that Danner and Hostetlar came to the house and took some items. *Id.* at 10-11. James testified the items in the house were older

and did not have enough value to sell. *Id.* at 11. James testified that to have an auction of the remaining items, the Estate would have had to pay someone to value the items, which then would have become taxable. *Id.* at 14.

Regarding the payment of the credit cards, James testified that he did not try to negotiate the costs, and that after the house was sold the Estate had sufficient funds to pay the credit cards. *Id.* at 15. On cross-examination, James acknowledged that some credit card companies offered that the Estate could pay a lower amount than the amount stated, but agreed that the Estate paid the full amount owed. *Id.* at 21-23.

James testified that the executor fee was slightly less than five percent of the Estate. *Id.* at 16. James testified that the payment of $625 to St. Mark Cemetery Association for the interment of ashes was for his father's ashes. *Id.* at 18. His father had passed away several years prior and had life insurance that would have covered his burial expenses. *Id.* James testified Decedent had promised that she would bury him, but she did not. *Id.* James stated that they buried his father, and that was an expense of the Estate, as Decedent had not done it. *Id.*

Hostetlar testified that she and her cousin Danner went to Decedent's home to look through the items. N.T., June 8, 2022, 68-70. She stated that they were only allowed in the kitchen and living room, not the other rooms or the basement. *Id.* at 69-70. She stated that she took two dressers and a bedroom set. *Id.* at 71-72. Further, her husband returned to the house and

received patio furniture, towels and linens, silverware, a freezer, and a refrigerator. ***Id.*** at 76-77.

Danner testified that when they went to Decedent's home to look at belongings, it was "just random stuff, stuffed animals, pictures, a lamp, no furniture, no tv stands, no TV, . . . a lot of knickknacks, some Christmas things." ***Id.*** at 113. She stated James said they did not need to see the other rooms. ***Id.*** Previously, she had asked whether she would be able to have a bedroom set, and she did not hear back from Co-Executors. ***Id.*** at 109. She said she saw the dresser when she looked at the belongings, and James offered it to her, but she testified that she no longer needed it because she had purchased something, and therefore Hostetlar took it. ***Id.*** at 114. She stated that the beneficiaries of the Estate had had a meeting with the lawyer where they discussed that if there were any items of value in the home, they had to be added to the Estate's funding. ***Id.*** at 115.

Danner testified that she objected to the $625 fee to inter Decedent's spouse's ashes. She stated that the Estate owned the ashes, but she objected to the fee because Decedent and her spouse "were supposed to be buried together." ***Id.*** at 136. She testified she did not research whether there would be two fees if burying two urns. ***Id.*** at 137.

Brian testified that there had been a general discussion among the beneficiaries about splitting up possessions, but no discussion about putting a dollar value on items. N.T., June 21, 2022, at 8. He said the items in the house

were at least 15 years old and in poor condition. *Id.* at 9. He testified he took a washer and dryer. *Id.* at 13.

James testified that he recalled a text from Danner about a refrigerator. *Id.* at 14. He stated the refrigerator was unplugged when he arrived and that to his knowledge it did not work. *Id.* He further testified that St. Mark charged two interment fees—one for Decedent and one for his father. *Id.* at 16.

Co-Executors admitted into evidence a text message Danner sent to James regarding Decedent's household possessions wherein Danner stated that "from her understanding there was quit[e] a bit of stuff there that really [did not] have much of a resale value, so if [they could not] use it or know someone that possible could, th[e]n the 'estate' is going to be responsible for paying for the disposal of it all." *Id.* at 22; Co-Executor's Exh. 1.[1]

The trial court sustained Danner's objection to the payment of James for lawn mowing and cleaning. It overruled the remaining objections. The court also denied the petition for adjudication/statement of proposed distribution without prejudice to file an amended petition. Danner appealed. This Court quashed the appeal as interlocutory. Order, No. 1315 WDA 2022, (Pa.Super. filed Mar. 13, 2023) (per curiam).

---

[1] Co-Executor's exhibits are not included in the certified record. A text chain between Danner and James was admitted at trial, and Danner does not claim that the text chain included in the supplemental reproduced record is not the exhibit admitted at trial. *See Commonwealth v. Barnett*, 121 A.3d 534, 545 n.3 (Pa.Super. 2015) (relying on transcript in reproduced record where no one disputed its accuracy).

In June 2024, the Co-Executors filed an amended first and final account, removing the payment for lawn care, and a petition for adjudication/statement of proposed distribution. Danner filed objections, reiterating the prior objections. In October 2024, the court overruled and denied the objections, approved and adopted the first and final account, and granted, approved, and adopted the petition for adjudication/statement of proposed distribution. Danner filed a notice of appeal.

Danner raises the following issues:

> 1. Did the trial court err in overruling Objection A regarding the incomplete list of principal receipts, specifically the failure to account for household items, fail[ure] to file inventory, failure to petition for approval of self[-]dealing?
>
> 2. Did the trial court err in dismissing Objection B as over broad concerning disbursements made by [C]o-[E]xecutors absent proof of expenses or provide vouchers or receipts for any expenditure?
>
> 3. Did the trial court err in overruling Objection C related to the credit card debt entries, where [C]o-[E]xecutors failed to produce proof of credit card debt, paid two credit cards for an amount greater then was asked for by the credit card company, and stated that some of the debt may have been from decedent spending on [Danner], and when [C]o-[E]xecutors failed to respond credit card company letters inviting [Co-E]xecutors to contact the credit card company in any attempts to negotiate payoff of credit card debt?
>
> 4. Did the trial court err in dismissing Objection D regarding the [C]o-[E]xecutors' fee as excessive when their fee was an arbitrary figure?
>
> 5. Did the trial court err in overruling Objection E concerning the payment to St. Mark Cemetery Association as not an expense of the [E]state?

Danner's Br. at 6-7 (suggested answers omitted).

Our standard of review of the findings of an Orphans' court is deferential.

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

However, we are not constrained to give the same deference to any resulting legal conclusions.

[T]he Orphans' court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law.

*In re Estate of Whitley*, 50 A.3d 203, 206-07 (Pa.Super. 2012) (internal citations and quotation marks omitted). "An abuse of discretion is not merely an error of judgment." *Silver v. Pinskey*, 981 A.2d 284, 291 (Pa.Super. 2009) (*en banc*) (quoting *Mencer v. Ruch*, 928 A.2d 294, 297 (Pa.Super. 2007)). Rather, a court abuses its discretion only if, "in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." *Id.* (citation omitted). "Our scope of review is also limited: we determine only whether the court's findings are based on competent and credible evidence of record." *In re Estate of Karschner*, 919 A.2d 252, 256 (Pa.Super. 2007) (quoting *In re Estate of Westin*, 874 A.2d 139, 142 (Pa.Super. 2005)).

Danner first maintains that the trial court erred in overruling her objection claiming that the Co-Executors provided an incomplete list of

principal receipts, as they failed to account for household items, failed to file inventory, and failed to file approval of self-dealing. She maintains the house contained "significant personal property," and Co-Executors testified that they took various items for themselves. Danner's Br. at 12. She argues Co-Executors failed to inventory, appraise, or account for the household contents, and that this failure was a breach of their fiduciary duty to collect and preserve estate assets for the benefit of heirs and creditors. Danner argues that the court's reliance on the possibility that Decedent gave Danner an *inter vivos* gift was misplaced, and there was no evidence to support such a finding. Danner maintains Co-Executors engaged in self-dealing by distributing estate assets to themselves without court approval, which she alleges is prohibited under 20 Pa.C.S.A. § 3356.[2]

The trial court explained that Decedent's Last Will and Testament permitted Co-Executors to sell property without a court order and that there

_____

[2] Section 3356 governs the purchase of property by an executor and provides:

> In addition to any right conferred by a governing instrument, if any, the personal representative, in his individual capacity, may bid for, purchase, take a mortgage on, lease, or take by exchange, real or personal property belonging to the estate, subject, however, to the approval of the court, and under such terms and conditions and after such reasonable notice to parties in interest as it shall direct. The court may make an order directing a co-fiduciary, if any, or the court's clerk to execute a deed or other appropriate instrument to the purchasing personal representative.

20 Pa.C.S.A. § 3356.

were misunderstandings of what belongings belonged to whom based on the

family dynamics:

> The Court is mindful of the clear intention of Decedent in Paragraph VI of Decedent's Last Will and Testament dated April 17, 1990 whereby she conferred upon Co-Executors the power ["]to sell any property, real or personal, publicly or privately, for cash or on time, without an Order of Court, upon such terms and conditions as they shall deem best without liability on the part of the purchaser to see the application of the purchase price". **See** Last Will and Testament dated April 17, 1990 of Cheryl A. Slusarick, Paragraph VI. The Court is mindful of Co-Executors' Exhibit 1 whereby [Danner] explicitly acknowledges that "there is still quit [sic] a bit of stuff there that doesn't really have much of a resale value". **See** Co-Executors' Exhibit 1. This Court has taken into consideration [Danner] acknowledging that " . . . if we can't use it or know someone that possibly could then [the] 'estate' is going to be responsible for paying for the disposal of all of it." **See** Co-Executors' Exhibit 1.
>
> [Danner] as well as other beneficiaries were offered access to Decedent's residence by the Co-Executors to remove personal property items of Decedent which [Danner] and others did. There were discrepancies and/or misunderstandings between the parties as to what personal property in Decedent's residence belong[ed] to Decedent and what did not belong to Decedent given the family history and relationship dynamics. There is an additional dispute between the parties over whether or not certain personal property was dispersed as a valid inter-vivos gift during Decedent's lifetime. Based upon the record, . . . and the actions of the [Danner] and Co-Executors the Court shall overrule Objection A. In so ruling, this Court does not even find it necessary or appropriate to exercise its powers in equity and assign a nominal value to the miscellaneous personal property items of Decedent. **See In re Hewitt's Estate**, 44 Pa.[ ]D. & C.2d 109 (Phila. Orph. 1968).

Trial Ct. Op., filed Oct. 6, 2022, at 1-2.

The record supports the court's factual findings and it did not abuse its discretion in overruling this objection. The evidence established that Co-Executors could sell items without a court order, there were disputes about to whom the various items belonged, and Danner acknowledged that much of the property did not have value. It was not an abuse of discretion to overrule this objection.

Danner next argues the court erred in overruling her objection concerning disbursements made by Co-Executors absent proof of expenses or providing vouchers or receipts for expenditures. She maintains the court erred in finding this objection to be overbroad. Danner argues that Co-Executors did not provide any vouchers, receipts, or other evidence for the expenses listed in the accounting. She claims the trial court "failed to hold [Co-E]xecutors responsible . . . for what they claimed were their expenses beyond just mere words and numbers on a page." Danner's Br. at 16-17. She claims Co-Executors should be surcharged for expenses for which they did not provide receipts.

Pennsylvania Rule of Orphan's Court 2.7(c)(1) provides that each objection must "be specific as to description and amount." Pa.R.O.C.P. 2.7(c)(1). The trial court found that Danner's objection to the account for failure to provide receipts was overly broad, because she did not specify what items the objection applied to. Trial Ct. Op. at 3.

The trial court did not err. The objection did not specify the items the objection applied to. We further note that Danner's counsel went to the office

of Co-Executors' counsel, and Danner was able to view the file and copy any items she wished. N.T., Nov. 3, 2021, at 29. Further, Danner references bills for credit cards, which is an item on the first and final account.

Danner next maintains the court erred in overruling her objection to the credit card expenses where Co-Executors failed to produce proof of the credit card debt, paid two credit cards for an amount greater than was requested by the credit card company, and failed to negotiate with the credit card companies. She further states the court erred when it stated some debt may have been from Decedent spending money on Danner. She claims Co-Executors should be surcharged.

The trial court overruled this objection, reasoning Decedent's Last Will and Testament provided that Co-Executors should pay her just debts and funeral expenses, and finding the credit cards were "just debts":

> [Danner'] Objection C objects to all credit card debt entries based upon the Co-Executors failing to attempt to negotiate settlement payments of Decedent's outstanding credit card debt. Paragraph I of Decedent's Last Will and Testament dated April 17, 1990 provides "I direct my Executor, or Co-Executors, as the case may be, hereinafter named, to pay all my just debts and funeral expenses as soon after my demise as conveniently may be". This [c]ourt finds Decedent's Last Will and Testament to be clear and unambiguous as to the Co-Executors paying all Decedent's just debts. A court may not under guise of construction or under general powers of equity assume to correct or redraft the will in which a testator has expressed his intentions. **In re Thomas' Estate**, 327 A.2d 31, 457 Pa. 546 [(Pa. 1974)].
>
> While testimony was offered by [Danner] relative to possible alternative settlement options, the [c]ourt must defer to the clear intention of Decedent in Decedent's Last

- 11 -

Will and Testament that the Co-Executors have broad authority to pay all [Decedent's] "just debts as soon after my demise as conveniently may be". The plain language of the Dece[]dent's Last Will and Testament gave broad authority to the Co-Executors to pay all "just debts" of Decedent. The Co-Executors fulfilled their duty under Decedent's Last Will and Testament, consequently, this Court shall not disturb the discretion afforded to Co-Executors by Decedent in paying all of Decedent's just debts. In this Court's view, [Danner] has no legal basis to assert her own judgment regarding paying Decedent's just debts. Accordingly, the Court shall overrule and dismiss Objector's Objection C.[2]

> [2] The [c]ourt notes that there was some evidence presented that some of Decedent's credit card debts may have been attributed to items Decedent purchased for [Danner] during Decedent's lifetime.

Trial Ct. Op. at 3-4.

The record supports the court's factual findings and it did not abuse its discretion in overruling the objection. The credit card bills were "just debts" of Decedent and paying such debts from the Estate was a proper use of funds. Further, the court noted that some of the debt may have been attributed to items purchased for Danner, but did not rely on this item in overruling the objection.

Danner next claims the trial court erred in dismissing her objections to the executor's fee, arguing the Co-Executors failed to prove the reasonableness of the fee. She argues the fee was excessive and arbitrary. She asserts the Co-Executors failed to provide evidence of the services rendered, stating the "only testimony provided . . . was simply that the executor chose an arbitrary percentage of 5%." Danner's Br. at 20. She

maintains the commission must be justified with articulable facts and claims the compensation can be based on a percentage, but "the true test is the actual worth of the services rendered, ensuring fair and just compensation." *Id.*

Pursuant to 20 Pa.C.S.A. § 3537, the orphans' court must "allow such compensation to the personal representative as shall in the circumstances be reasonable and just, and may calculate such compensation on a graduated percentage." The "basis for determining whether compensation is reasonable [under section 3537] depends upon the value of the services actually rendered." *In re Padezanin*, 937 A.2d 475, 485 (Pa.Super. 2007) (quoting *In re Estate of Geniviva*, 675 A.2d 306, 312-13 (Pa.Super. 1996)) (alteration in original). In addition, a personal representative seeking compensation from an estate's assets bears "the burden of establishing facts which show the reasonableness of their fees and entitlement to the compensation claimed." *Id.* (citation omitted). Finally, "the determination of whether the executor's fees are reasonable is left to the sound discretion of the Orphans' Court, and we will not disturb its determination absent a clear error or an abuse of discretion." *Id.*

The trial court found the executor's fee to be reasonable:

> James Slusarick testified that 5% of the gross estate was the usual and reasonable fee charged by [e]xecutors. The Court found such testimony to be credible and further finds that the 5% Co-Executors' fee to be reasonable. The Court further notes that there was time and effort devoted by the Co-Executors in preparing the assets of the estate, including

the real property, for sale and distribution. Accordingly, Objection E shall be overruled and dismissed.

Trial Ct. Op. at 4. This was not an abuse of discretion. Co-Executors testified to the time and effort they expended on the Estate and five percent was a reasonable fee.

In her last issue, Danner argues the court erred in overruling her objection to the payment of an expense to St. Mark Cemetery Association. She notes this cost was for the interment of Decedent's husband's ashes with Decedent. She claims the evidence did not reflect this was an additional cost beyond the cost of interment of Decedent. She further stated Co-Executors did not provide a receipt for the expense.

The trial court found the payment was a debt of the Estate because it was "a reasonable burial expense for one person, namely the Decedent, and was paid for as directed by Decedent's Last Will and Testament." Trial Ct. Op. at 5-6.[3]

_____

[3] The trial court reasoned:

[Danner] maintains that $625.00 was improperly paid to St. Mark Cemetery Association for the burial of Decedent's predeceased spouse's cremated remains. In reviewing the testimony, the Court finds that [Danner] failed to present sufficient evidence that such expense was improper. Again, the Court emphasizes that the clear and plain language of Decedent's Last Will and Testament provided that the Co-Executors had broad authority to "pay all [Decedent's] just debts and funeral expenses as soon after my demise as conveniently may be". *See* Last Will and Testament of Cheryl M. Slusarick, Paragraph 1. On cross-examination, [Danner] admitted she was unaware that $625.00 was the

*(Footnote Continued Next Page)*

Here, the record does not support the trial court's finding that the $625 fee was for the interment of Decedent. Rather, the testimony was that the $625 for the interment of Decedent's spouse, Co-Executors' father, who predeceased Decedent. However, the evidence supports overruling the objection, as the $625 fee was a proper debt of the Estate. The evidence showed that the payment was for the interment of Decedent's spouses ashes, that had he been buried upon his death and the insurance proceeds would have covered the costs, and that Decedent had told Co-Executors that she would bury his ashes.

Order affirmed.

---

burial fee for one person's cremated remains regardless of whether there was only one urn. No evidence was offered that the $625.00 fee had anything to do with the cremated remains of Decedent's pre-deceased spouse. The Court therefore finds $625.00 to be a reasonable burial expense for one person, namely the Decedent, and was paid for as directed by Decedent's Last Will and Testament. Whether the cremated remains were the property of Decedent or thereafter the responsibility of the next of kin of Decedent's pre-deceased is irrelevant for purposes of Objection G which the Court shall overrule.

Trial Ct. Op. at 5-6.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  <u>10/07/2025</u>